ALLTON STREETER, ADMINISTRATOR, ETC., v. THE WESTERN UNION MUTUAL LIFE AND ACCIDENT SOCIETY OF THE UNITED STATES.

*Life insurance—Avoidance of liability because of suicide of insured —Construction of policy—Insanity.*

1. A life insurance policy provided that if the insured should die by his own hand, *sane or insane*, the policy should become null and void.
    *Held*, that the provision covers all *conscious* acts of the insured by which death by his own hand is compassed, whether he was at the time sane or insane.   If the act was done for the purpose of self-destruction, it matters not that the insured had no conception of the wrong involved in its commission.

2. Where, in a suit on a life insurance policy claimed to have been voided by the suicide of the insured, testimony was introduced tending to show that, about six weeks before insured shot himself, he fell upon the sidewalk, and received an injury at the base of the brain, after which witnesses testified to observing a marked change in his demeanor, and that he complained of pain in the back of his head, and they attributed his insanity to such fall,—
    *Held*, that, granting that the fall was the *producing* cause of his insanity, by reason of which insanity he took his life, it does not logically follow that such *suicide* was caused by the fall and injury; and that the question whether such injury was the *cause* of the killing was too conjectural to be submitted to the jury as a *direct* cause of insured's self-destruction.

Error to superior court of Detroit.   (Chipman, J.)   Argued February 3, 1887.   Decided February 15, 1887.

Assumpsit. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Edwin F. Conely*, for appellant.

*Ormond F. Hunt* (*Griffin & Warner*, of counsel), for defendant.

CHAMPLIN, J. The policy of insurance introduced in evidence in this cause contained the following clause:

"If the insured shall, * * within three years of the date of this policy, die by his own hand, sane or insane, * * this policy shall become and be null and void."

Within three years from the date of the policy the insured died from the effects of a pistol-shot wound inflicted upon himself. The evidence tended to prove that when he shot himself he was insane. Witnesses expressed the opinion that his mental condition was such that he was unable to control any of his physical actions that might have been called upon to carry out any one of his impulses. It is not claimed that the self-destruction of the insured was accidental.

The court below construed the language of the policy above quoted as covering all acts of self-destruction, whether felonious or not, and was meant to excuse the company from liability when the suicide was the result of insanity, and in itself an insane act; that the words "sane or insane," in this case, not only meant to qualify the meaning of "die by his own hand," as defined by law, but that they actually do so.

Counsel for plaintiff contends that the phrase, "die by his own hand," had a well-understood signification in the law of insurance; that when the defendant insurance company selected such expression, and inserted it in its policy, it should be held to have used it in its legal sense, namely, as meaning, "shall voluntarily and intentionally take his own life;" that, by adding the words "sane or insane," the defendant had not caused the expression, "die by his own hand," to mean something which it did not mean without such addition, but

had used a combined expression, which was tantamount to saying, "shall voluntarily and intentionally take his own life, sane or insane;" that if the expressions, "die by his own hand," and "sane or insane," were incongruous or inconsistent, the beneficiaries under the policy should not suffer by it; that in his opinion, however, they were not incongruous or inconsistent, but could be legally and scientifically combined, and stand together without conflict, as both voluntary and involuntary self-killing were compatible with insanity.

We are unable to agree with the construction which the learned counsel for the plaintiff places upon the clause of the contract in question. The subject is not a new one in the courts. The precise question came before the United States Supreme Court in *Bigelow v. Berkshire Life Insurance Co.*, 93 U. S. 284, where Mr. Justice Davis, in an able and exhaustive opinion, so fully reviews the subject, and the construction to be placed upon the term "sane or insane," as to render a further discussion of the subject unnecessary. It has also received attention in the following cases: *De Gogorza v. Knickerbocker Life Ins. Co.*, 65 N. Y. 232; *Pierce v. Travelers' Life Ins. Co.*, 34 Wis. 389; *Salentine v. Mutual Ben. Life Ins. Co.*, 24 Fed. Rep. 159; *Riley v. Hartford Life & Annuity Ins. Co.*, 25 Id. 315.

It was said by Mr. Justice Davis in *Bigelow v. Insurance Co., supra*, that—

"The policy was rendered void if the insured was conscious of the physical nature of his act, and intended by it to cause his death, although at the time he was incapable of judging between right and wrong, and of understanding the moral consequences of what he was doing."

It was claimed in this case that, if the insured was unconscious of the act he was committing, it was merely an accident, and was not within the intent and meaning of the terms of the policy. But the learned judge said that the term, "wholly unconscious of the act," refers to the real nature

and character of the act as a crime, and not to the act itself.
He further said that—

"Bigelow knew he was taking his own life, and showed
sufficient intelligence to employ a loaded pistol to accomplish
his purpose; but he was unconscious of the great crime he
was committing. His darkened mind did not enable him to
see or appreciate the moral character of his act, but still left
him capacity enough to understand its physical nature and
consequences."

If a person does an act in a state of unconsciousness, or in-
voluntarily, whether he be sane or insane, such act is nothing
more nor less than accidental, and would not operate to for-
feit the policy. The record in this case does not disclose
such a state of facts. There was no evidence that the act
was involuntary, or that Mower was unconscious when he
inflicted upon himself the fatal wound. The only testimony
which can be claimed to have any bearing upon the subject
is that given in answer to questions calling for the opinion
of the witnesses as to whether Mower's insane mental condi-
tion affected his ability to control his own physical actions.
These witnesses did not claim to have been present at the
time, or to have been acquainted with the circumstances of
the transaction, but they based their opinion upon what they
had observed of his mental condition previous to the act of
self-destruction. Such testimony was entirely destitute of
any probative quality. The court was right in disregarding
it. The same point was passed upon in *De Gogorza v.
Knickerbocker Life Ins. Co.*, *supra*. The policy covers all
conscious acts of the insured by which death by his own
hand is compassed, whether he was at the time sane or insane.
If the act was done for the purpose of self-destruction, it
matters not that the insured had no conception of the wrong
involved in its commission. Upon the facts presented by
this record, the charge of the trial judge was correct.

Error is assigned that the court did not permit the witness
Clara M. Mower to testify in relation to conversations with

Samuel C. Mower concerning his fall. This assignment is founded upon a mistake. The court did permit the witness to testify fully as to what her husband said. She testified to what complaints he made, and also to what he said.

It is also assigned as error that the court refused to permit the plaintiff to go to the jury upon the question of how far the accident alluded to in the testimony produced the condition of mind resulting in the killing. There were no requests to charge presented to the court by either party.

Some testimony was introduced tending to show that, about six weeks before the insured shot himself, he fell upon the sidewalk, and received an injury at the base of the brain; and several witnesses testified that, after that time, they observed a marked change in his demeanor, and that he complained of pain in the back of his head, and they attributed his insanity to his fall. He shot himself April 10, 1885. But one witness, Mr. Stanely Stout, testifies to his strange and unnatural demeanor in the fall of 1884; that he never seemed to know exactly what he was about, or to have control of his faculties,—sitting silent and moody, and lingering for hours at a time, while constantly professing to be in haste. He does not remember any particular change in his manner or actions shortly before his death. So that his fall seems not to have been the producing cause of his insanity, but may have had an accelerating effect upon the predisposing cause.

Granting, however, that it was the producing cause of his insanity, and by reason of his insanity he purposely took his own life, it does not logically follow that the suicide or self-destruction was caused by the accidental fall and injury. The cause and effect are too remote and unconnected with each other. Most, if not all, cases of insanity are the result of disease either of the brain or nervous system, and such disease may in many instances be caused by accident; but what phase of insanity the diseased mental condition may assume

it is impossible to tell, or to trace to antecedent causes.  In this instance, whether the injury received by the fall was the cause of the killing was too conjectural to be submitted to the jury as a direct cause of self-destruction.

The judgment of the superior court of Detroit is affirmed.

CAMPBELL, C. J., and SHERWOOD, J., concurred.  MORSE, J., did not sit.