CLARKE et al. v. EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. November 6, 1902.)

No. 410.

1. LIFE INSURANCE POLICY—EXCEPTED RISKS—SELF-DESTRUCTION, SANE OR INSANE.

A provision of a life insurance policy that "self-destruction, sane or insane," is a risk not assumed, must be given effect in accordance with its plain meaning, and there can be no recovery under such policy where the insured took his own life other than accidentally, whatever may have been his mental condition.

In Error to the Circuit Court of the United States for the District of Maryland.

The point presented for review on this writ of error arises out of the following facts and proceedings: The Equitable Life Assurance Society of the United States, on March 25, 1899, issued to William E. Clarke two policies of insurance, each conditioned for payment of $10,000 upon the death of said William E. Clarke to his wife, Sallie F. Clarke, and, on certain contingencies, to the other plaintiffs in error. Among other provisions, each of these policies contains the provision that "self-destruction, sane or insane, within one year from the date of the issuance of the policies, is a risk not assumed by the society in this contract." On December 14, 1899, said William E. Clarke died from the effects of a pistol shot wound, which was inflicted on his head while the pistol was in his own hands. Due proofs of loss were furnished to the defendant company, and payment of said policies was demanded, and upon the refusal of said company to recognize this liability plaintiffs in error filed in the superior court of Baltimore city a declaration in the usual form against the defendant. The defendant appeared in that court, and had the case removed to the circuit court of the United States for the district of Maryland, in which latter court it filed four pleas, the first two of which were general issue pleas, on which issue was joined by the plaintiff. The third and fourth pleas were as follows: For a third plea it says that "said policies were made subject to a proviso that the defendant did not assume the risk of self-destruction, sane or insane, of the said William E. Clarke, within one year from the date of the issuance of the said policies, and that the said William E. Clarke committed self-destruction on or about the 14th day of December, 1899, by shooting himself through the head with a pistol, by reason of which self-destruction of said William E. Clarke said policies became null and void;" and for a fourth plea it says that it was "a condition of said policies that the said defendant should be liable to pay said insurance only on the receipt of satisfactory proofs of the death of the insured, and that proofs have been furnished to said defendant by said plaintiffs, which proofs show the death of said William E. Clarke on or about the 14th day of December, 1899, and states the cause of his death as follows: Grippe, during the last month of his life, together with grief over the loss of his daughter four years ago, and overwork in business, combined to bring on mental derangement. Pistol shot ended his life during a temporary aberration"; and also as follows: "He had grippe about a month previously, and was weak and depressed, and during an attack of despondency shot himself in the head, and died in a few minutes." And the said policies were subject to a proviso that the said defendant did not assume the risk of self-destruction, sane or insane, of the said William E. Clarke within one year from the date of the issuance of the said policies. Thereupon the plaintiffs filed special replications to each of the said third and fourth pleas, which replications were as follows: "As to the defendant's third plea, the plaintiffs say that

¶ 1. Suicide as defense to action on insurance policy, see notes to Insurance Co. v. Florida, 16 C. C. A. 623; Casualty Co. v. Egbert, 28 C. C. A. 284.

See Insurance, vol. 28, Cent. Dig. §§ 1159, 1160.

they admit that said policies were made subject to the proviso mentioned in said plea, and they further admit said William E. Clarke on said 14th day of December, 1899, shot himself in the head with a pistol, in consequence of which he died on said day; but said plaintiffs deny that said act by said William E. Clarke constituted the self-destruction of said William E. Clarke within the meaning of said proviso in said policies; and said plaintiffs further say that at the time said William E. Clarke so shot himself in the head his mind was so affected and impaired by insanity that he, the said William E. Clarke, was then and there not conscious of the physical nature and consequence of the act he then committed, and did not intend by it to cause his death, but was moved and impelled to commit said act by an irresistible, insane impulse." "As to the defendant's fourth plea, the plaintiffs say that they admit that said policies contained the condition in reference to self-destruction mentioned in said plea, and that they submitted to said defendant proof showing the death of the said William E. Clarke on the 14th day of December, 1899, and that said proof of death contained the statements set out in said plea; but said plaintiffs say that at the time said William E. Clarke so shot himself in the head his mind was so impaired and affected by insanity that he, the said William E. Clarke, was then and there not conscious of the physical nature and consequences of the act he then committed, and did not intend by it to cause his death, but was moved and impelled to commit said act by irresistible impulse." To each of these replications the defendant demurred, and, these demurrers being sustained by the circuit court, the plaintiffs filed notice that they declined to amend said replications, and elected to stand thereupon, whereupon the circuit court entered final judgment for the defendant, and, writ of error having been granted, the case is here upon assignments of error, which present but one question, and that is whether the court below erred in sustaining the demurrer interposed by the defendant to the replications filed by the plaintiffs to the third and fourth pleas of the defendant.

Gans & Haman, for plaintiffs in error.

W. Irvine Cross, for defendant in error.

Before SIMONTON, Circuit Judge, and BRAWLEY and WADDILL, District Judges.

BRAWLEY, District Judge (after stating the case as above). If it was an open question, there is much to be said as to the injustice of contracts of this nature, for a person ought no more to be held responsible for the loss of his life when taken by himself under the ravings of delirium, or impelled by the hallucinations of melancholy, than if he dies from an ordinary disease, or from an accident; but that question is not before us, and it seems to be well settled that insurance companies may avoid altogether this class of risks, and that, being at liberty to stipulate against hazardous occupations, unhealthy climates, or deaths from consumption or other excepted diseases, they may also contract not to assume a risk of a certain mode of death, and presumably the premiums are calculated on the elimination of that risk. If the assured is informed in apt words of the extent of the limitation, it is not perceived that there is any good reason why such contract should not be governed by the same rules of interpretation which control courts in all other cases of contract, and why plain and unambiguous words should be frittered away by casuistry and refinement. Something of the cloud which seems to obscure the natural interpretation of contracts like this arises from certain expressions in the opinions of courts of the highest authority in cases arising prior to the time when the insurance companies embodied

in their contracts of insurance what Mr. Justice Gray calls "the significant and decisive words" employed here. It may not be unprofitable to refer to some of these decisions construing the effect of provisions against liability for suicide in life insurance policies. The case of Borradaile v. Hunter, 5 Man. & G. 639, is the leading English authority. In that case the words of the proviso were "died by his own hand," and the decision was that the insurer would be exempt from liability if the act of self-destruction was the voluntary and willful act of a man having at the time sufficient powers of mind or reasoning to understand the physical nature and consequences of such an act, having at the time the purpose and intention to cause his own death by that act; and that the question whether at the time he was capable of understanding the moral nature and quality of his purpose was not relevant to the inquiry further than as it might help to illustrate the extent of his capacity to understand the physical character of the act itself. The leading case in the supreme court of the United States in construing a similar proviso is Insurance Co. v. Terry, 15 Wall. 580, 21 L. Ed. 236, where the American doctrine, differing from the English, is established. The court in that case holds:

"If the assured, being in the ordinary possession of his reasoning faculties, from anger, pride, jealousy, or desire to escape from the ills of life, intentionally takes his own life, the proviso attaches, and there can be no recovery. If the death is caused by the voluntary act of the assured, he knowing and intending that death shall be the result of his act, but when his reasoning faculties are so far impaired that he is not able to understand the moral character, the general nature, consequences, and effect of the act he is about to commit, or when he is impelled thereto by an insane impulse, which he has not the power to resist, such death is not within the contemplation of the parties to the contract, and the insurer is liable."

This case, which has been repeatedly reaffirmed, held that the proviso against death by suicide did not embrace a case of self-killing which was not intentional, and when the deceased did not realize the physical nature and consequences of his act, and took his own life, being moved by an irresistible, insane impulse, it was not his act, and no more than a mere accident.

To meet this condition, which practically nullified all provisos against death by suicide, the insurance companies have sought to avoid altogether this class of risks, and the policy under consideration evidently was intended as a contract where the insurer did not assume the risk of a certain mode of death. The first case that came up for decision in the supreme court of the United States upon a policy containing a proviso that the insurance company did not assume the risk of self-destruction, sane or insane, was Bigelow v. Insurance Co., 93 U. S. 286, 23 L. Ed. 918, where Mr. Justice Davis uses this language:

"As the line between sanity and insanity is often shadowy and difficult to define, this company thought proper to take the subject from the domain of controversy, and by express stipulation preclude all liability by reason of the death of the insured by his own act, whether he was at the time a responsible moral agent or not. Nothing can be clearer than that the words 'sane or insane' were introduced for the purpose of excepting from the operation of the policy any intended self-destruction, whether the insured was

of sound mind or in a state of insanity. These words have a precise, definite, well-understood meaning. No one could be misled by them. Nor could expansion of this language more clearly express the intention of the parties. In the popular, as well as the legal, sense, suicide means, as we have seen, the death of the party by his own voluntary act; and this condition, based on the construction of this language, informed the holder of the policy that, if he purposely destroyed his own life, the company would be relieved from liability."

And the court sustained the ruling of the court below in holding that a replication setting up that "at the time when he inflicted said wound he was of unsound mind, and wholly unconscious of his act," was bad; and adds:

"Bigelow knew that he was taking his own life, and showed sufficient intelligence to employ a loaded pistol to accomplish his purpose; but he was unconscious of the great crime he was committing. His darkened mind did not enable him to see or appreciate the moral character of his act, but still left him capacity enough to understand its physical nature and consequences."

Insurance Co. v. McConkey, 127 U. S. 661, 8 Sup. Ct. 1360, 32 L. Ed. 308, was an action upon an accident policy of insurance which contained a proviso that no claim should be made when a death or injury may have been caused "by suicide (felonious or otherwise, sane or insane)." The petition, which set out the plaintiff's cause of action, alleged that the insured was accidentally shot through the heart by a pistol or gun by a person or persons unknown to plaintiff. The answer alleged that the death was caused by suicide. The court says:

"Upon the whole case the court is of opinion that by the terms of the contract the burden of proof was upon the plaintiff, under the limitations we have stated, to show from all the evidence that the death of the insured was caused by external violence and accidental means. Also that no valid claim can be made under the policy if the insured, either intentionally or when insane, inflicted upon himself the injuries which caused his death."

In Insurance Co. v. Crandal, 120 U. S. 531, 7 Sup. Ct. 687, 30 L. Ed. 740, the suit was upon a policy which provided that the insurance should not extend to death by suicide or self-inflicted injuries, and Justice Gray says:

"This court, on full consideration of the conflicting authorities upon that subject, has repeatedly and uniformly held that such a provision, not containing the words 'sane or insane,' does not include a self-killing by an insane person, whether his unsoundness of mind is such as to prevent him from understanding the physical nature and consequences of his act, or only such as to prevent him from foreseeing and premeditating its physical consequences and understanding its moral nature and aspect."

And in Insurance Co. v. Akens, 150 U. S. 475, 14 Sup. Ct. 157, 37 L. Ed. 1148, which was upon a like policy, the same justice says:

"The clause contains no such significant and decisive words as 'die by suicide, sane or insane,' as in Bigelow v. Insurance Co., or by 'suicide (felonious or otherwise, sane or insane),' as in Insurance Co. v. McConkey."

It will be observed that the proviso under consideration contains no words limiting its operation to intentional suicide. The company contracted that it would not assume the risk of self-destruction, sane or insane. The contention of the appellant is that self-destruction avoids the policy if the insured lacked intelligence to know that his

act was wrong, but that it is not avoided if he did not understand the physical nature of his act. To sustain such contention would require us to believe that the deceased shot himself through the head because he did not know that it would kill him. Instead of giving to the words of the proviso the plain meaning for which they were manifestly intended,—that the insurer intended to guard itself from liability if the insured came to his death from any physical movement of his own, whether sane or insane,—we would lose ourselves in consideration of the different phases of insanity, be compelled to split it into degrees, and to hold that, if he was so entirely insane as not to understand the physical consequences of his act, the proviso would be avoided, while a lesser degree of insanity would make the company liable.

It is also contended that the replication here may be differentiated from that which was held "bad" in Bigelow v. Insurance Co. The replication there set up was that "at the time when he inflicted said wound he was of unsound mind, and wholly unconscious of his act." The replication here is that he was "not conscious of the physical nature and consequences of the act he then committed, and did not intend by it to cause his death, but was moved and impelled to commit said act by an irresistible insane impulse." This seems to us a distinction without a difference, and may be best answered by citation from the opinion of the court in De Gogorza v. Insurance Co., 65 N. Y. 232:

"But the question seems to involve more the refinement of language than the application of practical sense, and we are of opinion that in the common judgment of mankind it would be considered that, when a totally insane man blows his brains out with a pistol, that he would be said to have died by his own hand within the meaning of the policy, such as we have under consideration."

It will be observed that the proviso is not limited to willful or intentional suicide, but includes any self-destruction, sane or insane. If the assured caused his own death while sane or insane, that is the end of any right to recover, and there can be no looking into the condition of the mind of the deceased when he committed the fatal act. The case might be different if the replication had stated that his death was due to an accidental cause,—if, for example, he had taken a poisonous draught, mistaking it for water; or walked through a window, mistaking it for a door. Then it would fall within the rule established by a number of cases which hold that accidental or unintentional self-destruction is not within a condition forfeiting a policy for suicide. If the deceased had died by reason of any such accidental killing, the replication would have traversed the plea; but the replication admits that he took his own life, "moved by an irresistible insane impulse." In plain words, it confesses the cause of death, and seeks to avoid the bar by setting up a state of insanity. It does not seem to be denied that an insurance company may contract to avoid liability if death results from any disease of the mind, just as it may guard itself from liability from any specified bodily disease if the contract is embodied in apt language. The words "self-destruction, sane or insane," would mean nothing if the appellant's contention is sus-

tained, for we would have to conclude that the deceased did not die by his own hand if death resulted from irresistible insane impulse. We are of opinion that by the plain rules of interpretation the defendant, under this contract, is exempt from liability, and we do not know in what more precise words the plain intention of the parties could have been more accurately expressed.

The judgment of the court below is affirmed.