## Columbian National Life Insurance Company v. Wood.

(Decided November 15, 1921.)

### Appeal from Christian Circuit Court.

1. Insurance—Life Insurance—Suicide.—A clause in a life insurance policy exempting the company from liability on the contract, in case the insured came to his death by suicide, is enforcible,

but the beneficiary may have a recovery even though the insured took his own life, if at the time he did so he was so insane that he did not know what he was doing, or that the act he was performing was likely to result in his death, but if he had enough mind to know that the act would probably result in his death, or if he inflicted it with that intention, the company is not liable.

2. Insurance—Life Insurance—Suicide—Instruction.—It was error for the trial court to instruct the jury that if it believed from the evidence that the act of self-destruction of the insured was the result of an irresistible impulse, over which his will had no control, and that such act of self-destruction was not an act of his volition, the jury should find for the plaintiff, the correct rule being that if the insured was so insane or his mind so far gone that he did not know and did not realize that the act which he was performing would likely result in his death.

3. Insurance—Life Insurance—Insane Persons—Beneficiaries.— Where the insured, about three days before his death, changed the beneficiary in the policy with the consent of the company, the original beneficiary has no cause of action on the policy unless the insured, at the time he changed the beneficiary, was so insane that he did not have capacity to enter into a contractual relation or to transact business.

WM. MARSHALL BULLITT and BRUCE & BULLITT for appellant.

TRIMBLE & BELL for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

The policy of life insurance on which appellee, Hattie C. Wood brought this action and recovered in the lower court a judgment for $2,000,00 against the appellant, Columbian National Life Insurance Company, contains a clause insuring only:

"Against loss resulting from bodily injuries effected directly and independently of all other causes through accidental means (excluding self-destruction, or any attempt thereat, while sane or insane)."

Her husband, Thomas O. Wood, the insured, committed suicide in August, 1918, by shooting himself through the head. Briefly the facts are these: Wood and his wife had become estranged and she had taken their nine months' old baby and leaving Hopkinsville, their home, went to the home of her father in the country, where she remained a few days, later returning to the city of Hopkinsville. She had consulted an attorney about instituting divorce proceedings. Wood was employed in

the postoffice, but at times did and said strange and unnatural things. He was very anxious to have his wife return home and besought her to do so. He also endeavored to procure other persons to assist him in inducing her to return home. He had pleaded with her to talk the matter over with him, and in doing so, had on different occasions shed tears copiously; when she refused he said he would kill himself and their nine months' old baby if she did not return to him. Their marriage relations were at this stage when on the afternoon of an August day he left the postoffice, and going in the direction of home, came by the house where his wife was visiting and seeing her at the window he went up and asked her to come home, if not to stay, at least to talk over their difficulties. This she refused to do, whereupon he said to her, "I am going to do what I told you." He then asked to see the baby and the lady of the house brought it to the door. He took it in his arms, caressing it tenderly, declaring how much he loved it; he then walked back to the window where his wife was sitting and again besought her to go home with him, and when she refused he said, "I am going to do what I told you." This frightened the wife and she began to scream, whereupon he ran around the house, up an alley, and taking a pistol from his pocket, sent a bullet through the infant and into himself, killing the infant instantly and inflicting a mortal wound upon himself, but to make assurance doubly sure he placed the pistol to his head and fired another shot which caused his death immediately.

Courts generally hold a clause in a policy exempting life insurance companies from liability for death by suicide, enforcible, and this too when the act is done by the insured while "sane or insane." Our rule, we think, is somewhat more humane, just and equitable and allows a recovery on a policy which contains a suicide clause, "whether sane or insane," if the mind of the insured was so far gone at the time he committed the act which resulted in his death that he did not know he was taking his life or that the act which he was committing would likely result in his death. If he had mind enough to know that the act would probably result in his death, or if he inflicted it with that intention, it is his act in law, for which the company is not responsible. Masonic Life v. Pollard, 121 Ky. 351, 14 R. C. L., page 1233.

While there were a number of witnesses introduced by the insurance company who testified that Wood acted like a normal, rational person on the day of his death and at all times previous thereto, there is enough evidence to the contrary by other witnesses to justify the submission of the question of his sanity to the jury. As it is conceded that the insured committed suicide the only remaining issue is: Was he sane or insane at the time he took his life? If he was sane or if he was rational enough to know that he was taking his own life or that the act which he was about to perform—fire a bullet from a pistol into his body or head—was likely or calculated to bring about his death, the quoted clause of the policy is operative and there can be no recovery on the policy. If, on the contrary, Wood was so insane that he did not know or realize that he was about to kill himself or that the act of firing a bullet from his pistol into his body or head would likely bring about his death, the policy is not defeated by the suicide clause above quoted, and the beneficiary is entitled to recover thereon.

The lower court in instructing the jury said: "If you believe from the evidence that the deceased, Thomas O. Wood, took his own life by shooting himself with a pistol, you will find for the defendant, whether the said Wood was sane or insane at the time, unless the jury should further believe from the evidence that at the time he shot himself, if he did shoot himself, the said Thomas O. Wood was so insane that he did not know he was taking his life; and if the jury believe from the evidence that at the time he shot himself, if he did shoot himself, he was so insane that he did not know that he was taking his life, or if the jury should believe from the evidence *that his act of self-destruction was the result of an irresistible impulse over which his will had no control and that such act of self-destruction was not an act of his volition,* the jury should find for the plaintiff in the sum of $2,000.00, the amount sued for." And in a second instruction the court told the jury: "Although you may believe from the evidence that Thomas Wood was insane at the time he shot himself, if he did shoot himself, yet the jury should find for the defendant, unless you should believe from the evidence that at the time he did so, he was so insane that he did not know the act he was committing would probably result in his death." Counsel for appellant admit that the foregoing instructions are prac-

tically correct except that instruction number one should not have contained the provision, "or if the jury should believe from the evidence that his act of self-destruction was the result of an irresistible impulse over which his will had no control and that such act of self-destruction was not an act of his volition, the jury should find for the plaintiff," and this part of said instruction is assailed as repugnant to a long line of cases decided by this court—Mooney v. Ancient Order, 114 Ky. 950; Hunziker v. Supreme Lodge, 117 Ky. 418; Switchman's Union v. Johnson, 32 Ky. L. R. 583; Banker's Union v. Donahue, 109 S. W. 878—and is misleading and highly prejudicial to the rights of the insurance company, in that it allows a recovery on the policy even though the insured took his own life at a time when he knew that he was doing so and that the act which he was then committing was calculated to and would in all probability produce his death. This much of the instruction must be conceded to be erroneous. The trial court should not have so instructed the jury, and had the quoted words been omitted from instruction number one, that instruction would not have been subject to more than passing criticism. However, as instruction number two, which follows the foregoing instruction, directed the jury to find for the defendant insurance company unless the jury believed from the evidence that at the time Wood killed himself he was so insane that he did not know the act he was committing would probably result in his death, we are inclined to the view that the error in the first instruction was so neutralized as to become and it was in fact harmless. In other words, the jury was not authorized under the instructions as a whole to find anything for the plaintiff on the insurance policy, even though Wood was insane, unless the jury believed from the evidence that Wood was so insane at the time he fired the shot which took his life that he did not know the act he was committing would probably result in his death. The instructions as a whole required the jury, before finding for the plaintiff on the policy, to believe not only that Wood was insane but that his mind was so far gone that he was unable to understand and know that the act which he was committing would probably result in his death. They should not have authorized the jury to find for the plaintiff if his suicide was the result of an irresistible impulse over which he had no control, but only if he was

so insane as not to have realized the physical conse-
quences of his act. To so instruct the jury was error.

The mother, Mrs. Elizabeth A. Wood, was the bene-
ficiary in the policy at the time of its issual, but when
appellee, Mrs. Hattie C. Wood, married decedent he
caused her to be made beneficiary in the policy. She
continued so until only a few days before the death of
Wood, when he again changed the beneficiary, making it
payable to his mother, Elizabeth A. Wood. Thus it stood
at the time of Wood's death. In bringing her action ap-
pellee, Mrs. Hattie C. Wood, averred that at the time the
insured undertook to change the beneficiary in the policy
the last time and make the policy payable to his mother,
he was insane and unable to enter into any contractual
obligation or to understand or appreciate the nature or
effect of the transaction. This averment was traversed
by the insurance company, thus making an issue. Al-
though Mrs. Elizabeth A. Wood withdrew her answer,
asserting claim to the policy just before the trial started,
nevertheless appellee is not entitled to maintain this ac-
tion or recover on the policy if she was not at the time of
the death of Wood the beneficiary of the policy, and she
was not such beneficiary unless Wood was so insane at
the time he undertook to change the beneficiary the last
time as to incapacitate him to comprehend the nature and
effect of such transaction, and therefore to render it void.
This issue should have been submitted to the jury by a
proper instruction.

The court having declined to do so, although such an
instruction was offered, reversible error resulted.

Judgment reversed.