Aguida E. JOHNSON, Appellant,

v.

METROPOLITAN LIFE INSURANCE COMPANY.

No. 17060.

United States Court of Appeals Third Circuit.

Argued Oct. 21, 1968.

Decided Dec. 27, 1968.

---

Richard M. Goldman, Stein, Bliablias & Goldman, Newark, N. J., for appellant.

Alfred L. Ferguson, III, McCarter & English, Newark, N. J. (Eugene M. Haring, Newark, N. J., on the brief), for appellee.

Before HASTIE, Chief Judge and SEITZ and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Chief Judge.

The appellant is the beneficiary of a $30,000 insurance policy issued by the Metropolitan Life Insurance Company on the life of her late husband, Richard Johnson. She brought this action against the insurer in a New Jersey state court to recover the face amount of the policy. Because of diversity of citizenship the action was properly removed to the United States District Court. On a motion of the defendant insurer for summary judgment, the court entered judgment dismissing the action. 273 F.Supp. 589. The widow has appealed.

Certain facts were admitted or established without dispute by the complaint and answer, answers to interrogatories and answers to requests for admissions. The complaint alleges that "the insured died as a result of his own acts while insane." Answers to interrogatories show that the insured was an officer of the merchant marine who returned from a voyage to find that his wife, the appellant, had sued him for divorce. A few days later he was brought into court and ordered to stay away from his wife. The same evening he went to his home, spread fuel oil around a room and on his clothes and set fire to the premises and his clothing. He died of resulting burns. He left two notes, written in crayon and lipstick at the scene of his death. Both were short and apparently addressed to his wife. One accused the wife of concern only for herself, mentioned their five children and asked "why don't you have a little common sense think of what you are doing * * *" The other said merely: "95% of our time and money is spent making things appear what they are not."

The present dispute centers upon the following provision of the insurance policy:

" * * * If, within two years from the date of issue, the Insured dies as a result of suicide, while sane or insane, the liability of the company will be limited to an amount equal to the premiums paid, without interest."

The insured died within two years of the date of issue.

The parties agree that the insurance policy was a New Jersey contract, the validity and interpretation of which are to be determined by the law of that state.

In one branch of her argument the appellant seems to contend that "suicide while insane" is a self contradictory and, therefore, meaningless phrase, so that the attempted exception must fail in all cases of self destruction by a mentally deranged person. She claims support for that contention in Ruvolo v. American Casualty Co., 1963, 39 N.J. 490, 189 A.2d 204. However, the policy in the Ruvolo case excepted "death * * * caused intentionally by or at the direction of the insured", without any mention of conduct while insane. Since the exception did not explicitly cover this contingency, the court construed it strictly and decided that self destruction while insane was not "intentional" within the meaning of the policy exception. However, such an interpretation cannot reasonably be made where a policy

excepts "suicide, while sane or insane", since on its face that language plainly comprehends all purposeful self destruction, whether the suicidal intent and conduct shall emanate from a sane mind or a deranged one.

We find no case that holds an exception of suicide while insane to be meaningless or wholly ineffective. See Annotation, 9 A.L.R.3d 1015. Courts have disagreed upon the circumstances in which self destruction by an insane person may properly be characterized as suicide while insane. With Christensen v. New England Mut. Life Ins. Co., 1944, 197 Ga. 807, 30 S.E.2d 471, 153 A.L.R. 794, contrast Tritschler v. Keystone Mut. Benefit Assn., 1897, 180 Pa. 205, 36 A. 734. But under the arguable interpretation most favorable to the insured the exception covers self destruction purposefully accomplished in accordance with an intention or design conceived by a deranged mind.

■ It follows that summary judgment was improper in the present case only if the record established a disputable issue of fact whether the insured, in his admitted derangement, was attempting to take his life when he immolated himself. Of course a deranged person can believe that he is immortal, or that fuel oil is water, or, on some other irrational basis, that saturating his clothes with fuel oil and applying a lighted match will not kill him. Or his mental disorder may be so extreme that he has no comprehension whatever of what he is doing. Any such showing would negate intentional self destruction. However, no such claim appears here. While the complaint alleges that Johnson died at his own hand while insane, neither the complaint nor any other filing in this case suggests that Johnson's acts, obviously well adapted to self destruction, were not so intended. The record contains a summary of Johnson's actions during the days immediately preceding his death. There is no evidence that he did not know what he was doing. Even the notes he wrote before setting himself afire seem to have been calculated final words of bitterness and recrimination directed to his wife.

Moreover, in answering interrogatories concerning the decedent's mental state when he took his life, the plaintiff candidly stated that "the conclusion that decedent was insane at the time he took his life is in the area of expert evaluation, arrived at by a licensed and qualified psychiatrist following his examination into all of the facts concerning decedent's death and his life prior thereto." At the defendant's request, the court ordered the plaintiff to supply a more specific answer, but the plaintiff failed to do so. However, in answer to another interrogatory, she admitted that she had no knowledge that the defendant ever consulted with or received treatment by any psychiatrist.

Thus, the appellant has admitted that her only basis of judgment concerning the mental state of the insured when he killed himself is the opinion of one psychiatrist who never observed the insured. Moreover, even when instructed to give a more specific statement of her contention as to the mental state of the insured, she refrained from stating or offering to prove that the insured did not understand or intend the normal consequences of his conduct. Indeed, the appellant's brief suggests that the insured may have been impelled by an irresistible impulse to take his own life. But that conclusion would affirmatively establish that self destruction was the very result intended, albeit by a deranged mind.

In these circumstances the court below, in granting the defendant's motion for summary judgment, ruled that "plaintiffs [sic] have offered no allegation, let alone specific factual contentions which could support a reasonable conclusion that the decedent was unaware of the fatal consequences of his acts; indeed, such a contention would beggar credibility in light of the stipulated circumstances of his death." 273 F.Supp. at 593. We think this conclusion and the judgment to which it led were proper.

The judgment will be affirmed.