**ANN ARBOR TRUST COMPANY, a Michigan corporation, Plaintiff,**

v.

**NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE, a foreign corporation, Defendant.**

**Civ. A. No. 74–70649.**

United States District Court, E. D. Michigan, S. D.

Sept. 30, 1974.

William D. Barense, Dobson, Griffin & Barense, Ann Arbor, Mich. for Ann Arbor Trust Co.

B. Kinsley Buhl, Dickinson, Wright, McKean & Cudlip, Detroit, Mich., for North American Co. for Life and Health Ins.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KAESS, Chief Judge.

The undisputed facts upon which this action is founded, stated very briefly, are as follows:

On November 5, 1971, Alexander P. Dukay, a practicing psychiatrist in the City of Ann Arbor, Michigan, and formerly the superintendent of Ypsilanti State Hospital, shot his daughter (twice), his wife (at least five times), and himself within a period of less than one minute in the kitchen of their home at approximately eight o'clock in the morning. At the time of his death, Dr. Dukay was insured under defendant's policy of life insurance in the amount of $100,-000.00. This policy provides that "if the insured commits suicide while sane or insane within two years from the date of issue," the company's only obligation is to return the premiums paid. Dr. Dukay died within two years of the issuance of the policy.

That Dukay's death was a result of a self-killing is not denied by plaintiff, however, it is plaintiff's position that under the law of Michigan if the mental condition of Dr. Dukay immediately preceding his death was such that his act of self-killing was either involuntary or if at such time he did not understand the physical consequences of his act, the "suicide, sane or insane" exclusion of the policy is not applicable and the full face amount of the policy is due. Plaintiff further contends that under Michigan law a self-killing under such circumstances is not defined as suicide.

Plaintiff states that it intends to offer at trial expert psychiatric testimony in proof of the state of mind of Dr. Dukay as it existed immediately prior to his death.

In 9 A.L.R.3d, there appears at page 1015 et seq. an annotation dealing directly with the construction of the "sane or insane" provision of suicide exclusion clauses contained in insurance policies. The overview provided by that annotation is helpful in narrowing the legal issues to be considered by the Court in this matter. In the annotation at page 1017, the following was stated by way of summary as to the current state of the law:

"Provisions excluding or limiting the insurer's liability where injury or death results from suicide have usually been held valid, absent a regulatory statute providing otherwise. Numerous early cases held that self-destruction while insane was not suicide within the provision against death by suicide, since it was deemed that there could be no suicide unless the person committing the self-destructive act could form a conscious intention to kill himself and carry out that act, realizing its moral and physical conditions and consequences. As a reaction to these holdings, insurers began to add to the simple suicide exclusion the words 'sane or insane' and it is with the effect of these additional words that this annotation is concerned.

In construing the suicide exclusion as modified by the term 'sane or insane' (or equivalent language), the courts have reached substantial agreement that liability for a merely accidental death is not excluded, even though the destructive act was, in a sense, that of the insured, as where he accidentally shot himself. On the other hand, the position has generally been taken that even though the term 'suicide' is used in the exclusion, the

addition of the words 'sane or insane' does away with any necessity that the insured have had comprehension of the moral or legal nature and consequences of the destructive act. It also seems to be well settled that death from a self-destructive act falls within the exclusion of death from 'suicide, sane or insane', although the act was the result of an irresistible impulse and therefore not intended or mentally consented to by the insured.

The courts have reached widely opposed results, however, in passing upon the question whether 'suicide, sane or insane' can be found where the insured, at the time he destroyed himself, was so insane as not to be able to appreciate or comprehend the physical nature and consequences of the destructive act. Several courts have held that the lack of such comprehension is immaterial, and that recovery is barred if the act committed was of such a character that if performed by a sane person, it would have been regarded as suicidal. Other courts have held that if the insanity was such that the insured did not comprehend that the act performed would be injurious or fatal, or did not intend the fatal consequence of the act because of his insanity, the act could not be characterized as 'suicide' for the purposes of the exclusion clause."

It can thus be said that a "suicide, sane or insane" exclusionary clause clearly does not cover a case of accidental death in the ordinary sense. Michigan law is in accord with this position.[1] In the instant case, however, there appears to be no claim of accidental death. Moreover, the undisputed facts clearly belie such a contention and plaintiff has submitted nothing in the way of a factual assertion that the fatal head wound was accidental, as the term is commonly understood.

Plaintiff herein, however, appears to hang its hopes upon another exception

---

1. Blackstone v. Insurance Co., 74 Mich. 592, 42 N.W. 156 (1889); Courtemanche v. Supreme Court, I.O.F., 136 Mich. 30, 98 N.W. 749 (1904).

to the suicide exclusionary clause, namely, that the insured was so deranged as to be unable to comprehend the physical nature and consequences of his destructive act. Simply put, it is plaintiff's argument, and in the opinion of the Court, the only argument legally available to plaintiff, that the insured failed to realize that shooting himself through the head would most likely result in death.

Plaintiff, however, must overcome two obstacles to survive defendant's motion for summary judgment. It must be first established that there is a genuine issue or disagreement, and secondly, that the disagreement concerns a material fact.

The second obstacle is a legal one, for it will be established that the dispute concerns a material fact only if the Court finds that the proffered defense is available under Michigan law. Of the Michigan cases dealing with suicide exclusion clauses, the most recent was decided in 1904. More importantly, none of the cases has directly decided if the insured's failure to comprehend the physical consequences of his act will allow recovery under an insurance policy containing a "suicide, sane or insane" clause. Dicta in two cases militates in favor of recovery under such circumstances, Streeter v. Insurance Society, 65 Mich. 199, 31 N.W. 779 (1887); Sabin v. National Union, 90 Mich. 177, 51 N.W. 202 (1892). Dicta in another case, however, indicates that recovery would not be allowed, Blackstone v. Insurance Co., 74 Mich. 592, 42 N.W. 156 (1889). In *Streeter*, the court said that if one does an act in a state of unconsciousness, or involuntarily, whether he is sane or insane, such act is nothing more or less than accidental, and will not operate to forfeit the policy. In that case, however, the court said there was no evidence that the act was involuntary, or that the insured was unconscious when he inflicted upon himself the fatal wound.

In *Sabin*, the court seems to have assumed that in a proper case unconsciousness of the physical consequences of the act, or lack of intention to kill oneself, would prevent the application of the provision, although a directed verdict for the insurer was affirmed, apparently on the ground that the fact that the insured hanged himself showed that he was not unconscious of the physical consequences of the act and no evidence to the contrary was offered.

In *Blackstone*, the Court considered a simple suicide exclusionary clause, that is, one not modified by the words "while sane or insane." While the language therein was construed in a manner favorable to the insured, the Court, in an effort to lessen the impact on insurers, went on to explain its holding:

"Nor can it have any injurious effect, since insurers may always frame such contracts to suit themselves, and may, if they choose, insert express stipulations to the effect that insanity shall not in any case prevent an avoidance by the suicide of the insured.

\* \* \* \* \* \*

"Policies issued by some life insurance companies contain a condition or provision that it shall be void if the insured shall die by suicide, felonious or otherwise, sane or insane; others provide, if the insured shall die by suicide, sane or insane; others provide for an avoidance, if the insured die by his own hand, sane or insane; while others provide for an avoidance if he shall die by his own act and intention, sane or insane. Such a condition, expressed in any of these forms, covers any case of voluntary self-destruction, and no kind or degree of insanity will prevent an avoidance; and the courts, not only in England, but in this country, have almost universally held that with such provisions in policies of life insurance the policies are void if the insured comes to his death by his own hand." 74 Mich. 610, 611, 42 N.W. 156, 162.

Although the cited cases are of assistance, this Court is nevertheless confronted with an issue novel to Michigan

jurisprudence. After considering the plain and ordinary meaning of the contractual language, the probable intent and contemplation of the parties, and the trend of the law on this issue, the Court is constrained to reject plaintiff's position. Frankly, it is an argument that is so sublime as to approach the ridiculous Where but among lawyers could it be contended and argued that a man who in the period of one minute shot and killed his wife and daughter, reloaded his revolver, placed the barrel in his mouth and then pulled the trigger, had not committed suicide. Surely it was just such a scenario toward which the contractual language was directed and the risk of which the insurer sought quite legitimately to avoid. It is, therefore, the Court's feeling that the better rule is that which holds that the insurer need not prove that the insured had the capacity to comprehend the physical nature or consequences of his act in order to avoid liability. Ample authority for this proposition can be found at 9 A.L.R.3d 1015 and in the decision of Johnson v. Metropolitan Life Ins. Co., 273 F.Supp. 589 (D.C.N.J.1967); affirmed 404 F.2d 1202 (CA 3, 1968), wherein it was said:

"[T]his Court would follow the sound majority rule that applicability of a 'suicide, sane or insane' clause is not dependent on the insured's clear realization of the physical nature and consequences of his acts, for the reasons well stated in the most recent discussion of the rule in Aetna Life Ins. Co. v. McLaughlin, 380 S.W.2d 101, 9 A.L.R.3d 1005 (Tex.) (1964); see also Couch, 9 Insurance 2d, § 40.42 1962)."

 Even if it is assumed that the insured's comprehension of the physical nature of his act was material to the disposition of plaintiff's claim, there has been a failure to raise a genuine issue as to such fact. Defendants have set forth undisputed, and in most cases admitted, facts. It is also clear that the facts as set forth can readily support a finding or conclusion that the insured understood the physical nature or consequences of his act, in the absence of evidence to the contrary. *Streeter* and *Sabin*, supra. In *Sabin* the Court stated:

"Upon the question whether the person taking his life by his own hand was conscious of the natural result of the act which caused death, the facts of the Streeter case have a similar, if not the identical, bearing, as do the facts in the case before us. In that case Mower shot himself with a pistol, while here the plaintiff's intestate hung himself. There would be as much if not more deliberation in the act, and consciousness of the physical result, in this case as in the other. If, as was said in Bigelow v. Insurance Co., 93 U.S. 284, 23 L.Ed. 918, 'Bigelow (or Mower in the Streeter Case) knew he was taking his own life, and showed sufficient intelligence to employ a loaded pistol to accomplish his purpose,' then in this case Sabin knew he was taking his own life and showed sufficient intelligence to employ a rope, and adjust it to hang himself, and accomplished his death, and had 'capacity' enough to understand the physical nature and consequences of his act. In the Streeter case the fact that the suicide had capacity enough left to know the physical consequences of his act, although he did not appreciate its moral character, and was unconscious of the crime he was committing, was deduced entirely from the method employed in taking his life, * * *." 90 Mich. at 180, 51 N.W. at 203.

Likewise in Johnson, the Court in deciding a motion for summary judgment stated:

"In the present case, however, even assuming, without deciding, that comprehension of the fatal character of his action was required, plaintiffs have offered no allegation, let alone specific factual contentions which could support a reasonable conclusion that the decedent was unaware of the fatal consequences of his acts; indeed, such a contention would beggar credibility in light of the stipulated circumstances of his death. * * * This situation

is similar to that in Clarke v. Equitable Life Assurance Society, 118 F. 374 at page 378 (4th Cir. 1902) where the Court said:

> 'The contention of the appellant is that self-destruction avoids the policy if the insured lacked intelligence to know that his act was wrong, but that it is not avoided if he did not understand the physical nature of his act. To sustain such contention would require us to believe that the deceased shot himself through the head because he did not know that it would kill him.' " 273 F.Supp. at 593–594.

 Plaintiff has responded to the facts as set forth and to the conclusion that can be drawn therefrom with the mere assertion that some unspecified proof, presumably to the contrary, will be forthcoming at trial. It is settled that in motions for summary judgment, the responding party must set forth its facts in the form of affidavits, depositions, exhibits and the like. It is only in this way that a "genuine issue" is created, and a respondent cannot succeed by asserting that proof will be forthcoming at trial or by relying upon unsupported allegations or claims in the pleadings.

Federal Rules of Civil Procedure 56(e) provides in part:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

See Johnson v. Metropolitan Life Ins. Co., 404 F.2d 1202 (CA 3, 1968), for the application of the above principle in circumstances nearly identical to the instant case. See generally, Chapman v. Rudd Paint & Varnish Co., 409 F.2d 635 (CA 9, 1969); Garcia v. American Marine Corp., 432 F.2d 6 (CA 5, 1970); De Mert & Dougherty, Inc. v. Chesebrough-Pond's Inc., 348 F.Supp. 1194 (D.C.Ill. 1972); Franks v. Thompson, 59 F.R.D. 142 (D.C.Ala.1973).

For the foregoing reasons, it is ordered that defendant's motion for summary judgment be granted.