THE STATE ex rel. MARY C. SHOEMAKER v.
CHARLES H. DAUES et al., Judges of St. Louis
Court of Appeals.

Division Two, December 22, 1925.

CERTIORARI: Accident Insurance: Illinois Policy: Suicide: Delirium.
The relator sued on an accident policy promising to pay to her
five thousand dollars in case of the death of the insured "through
accidental means (suicide, sane or insane, is not covered),'' etc.
The policy was an Illinois contract, and the evidence showed that
the insured cut his throat three times with a knife, laying the
throat open and severing the jugular vein, then raised a window,
climbed upon the sill, bent over, bowed his head and threw himself
head foremost to the granitoid pavement below. *Held*, that the

State ex rel. Shoemaker v. Daues.

Court of Appeals did not contravene any controlling decision of this court in ruling that, whether or not the insured "was in a state of delirium which so disturbed or deranged his mental functions that he did not know what he was doing and was unconscious of the physical nature and consequences of his acts," he nevertheless committed suicide, and that there can be no recovery on the policy; on the contrary, its decision is in harmony with the rulings of this court upon Illinois contracts.

Accident Insurance, 1 C. J., Section 109, p. 444, n. 30. Insane Persons, 32 C. J., Section 2, p. 593, n. 19; Section 3, p. 593, n. 27; Section 47, p. 603, n. 22; Section 129, p. 619, n. 15.

. *Certiorari.*

WRIT QUASHED.

*J. D. Wilson* and *F. H. Bacon* for relator.

(1)  The opinion of the Court of Appeals is in conflict with the decisions of this court in that the verdict of the jury is ignored.  Egans v. Gen. Explosives Co., 293 Mo. 364; State ex inf. Poage v. Higley, 250 S. W. 61; State ex rel. v. Allen, 295 Mo. 307; Bothmann v. Met. Life Ins. Co., 299 Mo. 269; State ex rel. v. Trimble, 271 S. W. 47.  (2)  In weighing the evidence the Court of Appeals was not guided by the rules laid down by this court.  Parker v. Aetna Life Ins. Co., 289 Mo. 42; Pythias Knights' Sup. Lodge v. Beck, 181 U. S. 53; Matthews v. Modern Woodmen, 236 Mo. 326.  (3)  The opinion of the Court of Appeals is contradictory.  In one part it recognizes and in another part denies the principle that if a man, not knowing what he is doing, by some act causes his death, such death is not suicide, but is accidental.  Knights Templars v. Crayton, 209 Ill. 550; Cady v. Cas. Co., 134 Wis. 222; Bohaker v. Ins. Co., 215 Mass. 32; Dean v. Am. Ins. Co., 4 Allen, 96; Parker v. Ins. Co., 125 S. E. 6.  (4)  The opinion of the Court of Appeals is not in harmony with what is the true rule if the case of Seitzinger, referred to in the opinion, is

construed in connection with other cases decided by the Supreme Court of Illinois, especially the case of Knights Templars v. Crayton, 209 Ill. 550. See Supreme Lodge v. Gelbke, 198 Ill. 365; Dickerson v. Ins. Co., 200 Ill. 270. (5) In holding, as it did, that in law there is no difference or distinction between delirium and insanity, the opinion of the Court of Appeals is in conflict with the standard dictionaries, works on medical jurisprudence and the opinions of this court. 2 Hamilton's Medical Jurisprudence, p. 52; State v. Main, 69 Conn. 123; 23 C. J. 169; State ex rel. v. Seibert, 130 Mo. 221; Parker v. Ins. Co., 289 Mo. 42.

*Jones, Hocker, Sullivan & Angert* for respondents.

(1) The Court of Appeals expressed no opinion whatsoever of its own as to the proper interpretation of this contract. It was not called upon by the exigency of the case to do so, nor did it attempt any such. It was merely called upon to ascertain whether such a death as alleged by the plaintiff and found by the jury was covered by such insurance under the law and decisions of the State of Illinois. (2) The decisions in Illinois as reviewed in the opinion of the Court of Appeals leave no conclusion possible, save only that at which the Court of Appeals arrived, as to the state of the law of Illinois on the question arising on this record. The conclusion of the Illinois courts on the question has the full support of the judgment of this court thereon. Haynie v. Knights Templars, 139 Mo. 416. As well as most other courts which have had occasion to consider the question. Casualty Co. v. Blum, 258 Fed. 897; Sovereign Camp v. Hunt, 98 So. 62; Scarth v. Ins. Co., 75 Iowa, 346; Spruill v. Ins. Co., 120 N. C. 141; Billings v. Ins. Co., 64 Vt. 78; Jenkins v. National Union, 118 Ga. 587; Kruse v. Maccabees, 45 Ind. App. 30.

HIGBEE, C.—On the application of the relator, a writ of *certiorari* was issued to review the judgment of

the St. Louis Court of Appeals reversing the judgment of the trial court in an action by relator upon a policy issued by the Central Business Men's Association, an Illinois corporation, insuring the life of her husband, in which action the plaintiff recovered the full amount of the policy. The policy insured Dr. Samuel E. Shoemaker "against loss resulting from bodily injuries effected, directly or independently of all other causes, through accidental means (suicide, sane or insane, is not covered) as specified in the following schedule . . . For loss of life, $5,000."

This is an Illinois contract. Dr. Shoemaker was a patient in a hospital in Springfield, Illinois, and died on October 11, 1919, as the result of self-inflicted injuries. The opinion recites:

"There is nothing in the record in the present case tending in the slightest degree to show that the insured killed himself accidentally. His physical movements, as shown by the undisputed evidence, are not susceptible of any such interpretation. He cut his throat three times with his pocketknife, laying the throat open and severing the jugular vein. He then raised the window of his room, climbed upon the window sill, bent over, bowed his head and threw himself head foremost to the granitoid pavement below. From these physical movements, an intent to commit self-destruction is as manifest as if he had hanged himself, or shot himself, or taken a deadly poison. There is no hint or suggestion in the evidence that he came to his death by accidentally cutting his throat or accidentally falling from the window, or by the accidental or intentional act or acts of any other person. Besides, the plaintiff does not predicate her alleged right of recovery upon the death of the insured by any such accidental movements or acts. She did not so plead her case, nor did she try it on that theory below. She alleges in her petition that the insured, 'while delirious from the effect of drugs and illness and unable to understand or comprehend the nature or consequences of his act, wounded himself in the throat with a pocketknife

and threw himself from the window of the hospital, striking with violence on the granitoid pavement, which said injuries so received resulted in death.' The petition clearly declares upon accidental death in the sense that the insured took his own life when he was in such a condition of mind as to be incapable of understanding or comprehending the nature or consequences of the act of self-destruction.

"But it is urged by plaintiff's counsel that the insured in this case, when he committed the act or acts which caused his death, was neither sane nor insane, but was in a state of delirium, which so disturbed or deranged his mental functions that he did not know what he was doing and was unconscious of the physical nature and consequences of his acts, and that therefore his self-destruction was not 'suicide, sane or insane,' within the meaning of those words as used in the exemption clause of the policy. Counsel on both sides of this case have brought to our attention many definitions of 'delirium' and 'insanity' as formulated by eminent authorities. It would serve no useful purpose to enter into a discussion of the abstruse learning involved in these definitions. After having read them all, we have not the slightest hesitancy to say that a person whose mental functions are (so) disturbed or deranged by delirium, that he is unconscious of the physical nature and consequences of the act of self-destruction, is, in contemplation of law, *insane*.

"We find no recognition in the books of any state or condition of mind which is neither sane nor insane. If the insured, when he killed himself, was not 'insane' then he was 'sane.' The one term is but the antipode of the other. Whatever phase of mental condition is not included in the one term is included in the other. There can be no sort of doubt that the expression, 'sane or insane,' as used in the exemption clause of this policy, includes the entire range of mental condition. The law of Illinois is so written and we are bound by it."

After reviewing a number of decisions from the supreme and appellate courts of Illinois, the learned opinion proceeds:

"In Kiesewetter v. Knights of Maccabees, 227 Ill. 48, the insurance contract provides that the defendant should not be liable in case of the 'suicide of the insured, whether sane or insane.' The evidence showed that the insured committed suicide by hanging. The defendant demurred to the evidence in the trial court. The demurrer was sustained and judgment given accordingly. The Supreme Court, affirming the judgment of the trial court, said:

" 'Counsel stated to the court that he offered to prove . . . "that the deceased came to his death while insane; that his mind was in such a condition of insanity and frenzy that he was not aware, at the time of his death, of the physical consequences of his act if he took his life at the time." The offer was objected to and the court properly sustained the objection. [Seitzinger v. Modern Woodmen, 204 Ill. 58; Zerulla v. Supreme Lodge, 223 id. 518.]' "

In thus determining the rule of decision in the Illinois courts on the question at issue, we are at a loss to understand how it can be said that the decision is at variance with the rulings of this court. However, we find that this identical question has been before this court in three cases construing Illinois policies of insurance. In Haynie v. Knights Templars' & Masons' Life Ind. Co., 139 Mo. 416, 41 S. W. 461, syllabus 4 reads:

"The policy sued on contained a clause that avoided the policy 'in case of the self-destruction of the holder of this policy whether voluntary or involuntary, sane or insane.' *Held*, that the beneficiaries of the insured person could not recover, although it was admitted that, at the time the insured person committed suicide, he 'was insane to such an extent as to be unable to form an intent to take his own life.' Insanity, however much it may deprive the policy holder of volition, does not avoid such a clause in a policy of an assessment insurance com-

pany, nor is such a clause in anywise lessened or over-ridden by Section 5855, Revised Statutes 1889.''

And in Prentiss v. Ill. Life Ins. Co., 225 S. W. (Mo.) 695, 703, Division One of this court, in an opinion by SMALL, C., said:

''Prior to our statute on the subject, a provision in a policy of insurance in this State, that it should be void or did not cover the risk, in case the assured committed suicide, sane or insane, was a valid provision. [Adkins v. Ins. Co., 70 Mo. 27, 35 Am. Rep. 410; Haynie v. Knights Templars' & Masons' Life Ind. Co., 139 Mo. 416, 41 S. W. 461.]

''There is no statute in Illinois prohibiting such a condition in a policy, consequently it is a valid one in that State, and was a good defense in this case. [Seitzinger v. Modern Woodmen, 204 Ill. 58, 68 N. E. 478; Kiesewetter v. Supreme Tent, 227 Ill. 48, 81 N. E. 19.] Indeed, appellant makes no contention that any such statute existed in Illinois when this policy was issued.''

See also Lukens v. Ins. Co., 269 Mo. 574, 191 S. W. 418.

The decision of the Court of Appeals is not only not in conflict, but is in complete accord with our rulings. The writ was improvidently issued and is accordingly quashed. *Railey, C.,* concurs.

PER CURIAM:—The foregoing opinion of HIGBEE, C., is adopted as the opinion of the court. All of the judges concur.