363 So.2d 190 (1978)
ARKWRIGHT-BOSTON MANUFACTURERS MUTUAL INSURANCE COMPANY, Appellant,
v.
Diane DUNKEL, Laura Cestone, Appellees.
Diane DUNKEL, Individually, Appellant,
v.
ARKWRIGHT-BOSTON MANUFACTURERS MUTUAL INSURANCE COMPANY, Appellee.
Nos. 77-799, 77-801 and 77-976.
District Court of Appeal of Florida, Third District.
October 17, 1978.
*191 Stephens, Schwartz, Lynn, Chernay & Brandy, Joe N. Unger, Miami, for Arkwright.
Nachwalter, Christie & Falk and Jay M. Levy, Miami, for Dunkel.
Rossman & Baumberger and Robert D. Peltz, Miami, for Cestone.
Before HENDRY and BARKDULL, JJ., and PARKER, J. GWYNN (Ret.), Associate Judge.
HENDRY, Judge.
This is a consolidated appeal taken by appellant-defendant Arkwright-Boston Manufacturers Insurance Company (hereinafter referred to as Arkwright) from a final judgment and amended final judgment rendered pursuant to a jury verdict in favor of appellee-plaintiff Diane Dunkel, individually, and as administratrix of the Estate of Blanche Dunkel, deceased; and appellee-defendant, cross-plaintiff Laura Cestone, as administratrix of the Estate of Thomas Maguire, deceased. The judgments appealed from found insurance coverage in favor of appellees under a homeowner's liability insurance policy issued by Arkwright. Additionally, Diane Dunkel has taken an appeal from an order granting Arkwright's motion to set aside an award of attorney's fees previously entered in the final judgment but deleted from the amended final judgment. For the reasons that follow, we affirm all judgments.
This cause commenced with a complaint filed by appellee Diane Dunkel, individually, and as Administratrix of the Estate of Blanche Dunkel, deceased, against Laura Cestone, as Administratrix of the Estate of Thomas Maguire, deceased, and Arkwright. *192 The complaint alleged that Maguire was the brother of Blanche, that Diane was the daughter of Blanche and niece of Maguire, and that all three resided in the same household in Miami, Florida. The complaint further alleged that on December 21, 1973, Maguire fatally shot Blanche, seriously wounded Diane, and then shot himself to death. It was also alleged in the complaint that at the time of the shooting, Maguire "was suffering from a derangement of his intellect which deprived him of the capacity to govern his conduct in accordance with reason." By virtue of a homeowners liability insurance policy written by Arkwright in favor of those who resided in Blanche's home and protecting those residents against liability caused by their acts, Diane sought damages against both the Estate of Maguire, as a direct beneficiary of the policy, and Arkwright, as the insurer.
Appellant Arkwright answered the complaint, inter alia, denying coverage based upon an "intentional act" exclusion found in the policy. Said exclusion stated that coverage did not apply "... to bodily injury or property damage which is either expected or intended from the standpoint of the insured."
Appellee Cestone answered and filed a cross-claim against Arkwright asserting that at the time of the shooting, Maguire was insured under the homeowner's policy and that Arkwright had wrongfully denied coverage. Arkwright denied liability in the cross-claim, again alleging that Maguire's actions were excluded from coverage as being either "expected or intended from his standpoint."
Subsequently, Arkwright filed a "motion for separate trial" seeking a bifurcated proceeding in which the issue of insurance coverage would be tried prior to a trial on the merits. Said motion was granted and the case thereupon proceeded to jury trial on the issue of coverage at which time the jury heard the following testimony: that on December 21, 1973, Maguire, who had lived with Diane and her mother for approximately four years, beginning shortly after Diane's father's death, attacked the two, shooting to death Blanche and seriously wounding Diane. During his four year stay at Blanche's home, Maguire had never unpacked his suitcases, rarely ventured out of his room and spent a great deal of his time, with the lights turned off, reading medical books by flashlight. When Maguire did venture forth for short walks down the street he carried a stick or baseball bat for protection. All of his meals were served to him in his room, with Blanche always setting a tray outside his room. The tray would be taken by Maguire only after his sister Blanche (whom he apparently believed to be his mother) had departed.
It was reported to the jury that Maguire's personal hygiene was, by all standards, atrocious. While in the home he wore only pajamas, refusing to have them cleaned. Additionally, he would not permit Blanche to enter his room and change the sheets or pillow cases. Maguire bathed only once a month  and then only in oatmeal. Prior to the time he shot his sister and niece, Maguire possessed a long and complicated history of medical ailments all relating to stress. Such ailments dictated twelve separate hospitalizations. While the original intendment was for Maguire to live with his sister, go to work and help the family financially, the record reveals that he had never possessed a job since his arrival at Blanche's home. He had always been verbally abusive to his sister and niece, referring to the latter (whom he had on a prior occasion attempted to stab with a butcher knife) as that "little Nazi bastard."
The jury heard two physicians testify as to Maguire's mental capacity at the time of the shootings. Dr. Frederick Poppe, a specialist in internal medicine and Maguire's treating physician during some of his hospital stays, concluded that he was not insane, possessing sufficient mental capacity to understand that pointing a gun, pulling a trigger and by so doing releasing bullets into Blanche and Diane would cause personal injury, and possible death. Dr. Poppe readily admitted, however, that his opinion must be tempered by the fact that he is not a psychiatrist.
*193 Dr. Harry Graff, psychiatrist, was called as a witness for appellee, Diane. While Dr. Graff had never seen or examined Maguire, he was asked a lengthy hypothetical question which included many of the aforedescribed habits of Maguire. From that hypothetical, Dr. Graff concluded that at the time of the shootings, Maguire could not determine right from wrong and was legally insane. Dr. Graff did testify, however, that Maguire probably had sufficient mental capacity to realize that he was pointing a gun, discharging a bullet and firing at his victim, though Maguire could not comprehend that his actions would result in injury or death.
The jury, by finding for appellee Diane on her claim and appellee Cestone on her cross-claim implicitly determined that Maguire was insane at the time of the shootings and thus, incapable of "expecting or intending" the consequences of his act. Thus, Maguire's actions were not within the exclusion contained in the policy. Final judgment was entered in accordance with the jury verdict. Said final judgment included an award of attorney's fees in favor of Diane. Upon subsequent motion to set aside the award of attorney's fees, the trial judge entered an order setting aside its former award. An amended final judgment was subsequently entered reflecting the judge's denial of appellee's attorney's fees. Arkwright has taken this appeal from the final judgment and amended final judgment, while Diane, individually, and as the administratrix of the Estate of Blanche Dunkel, appeals from the order setting aside an award of attorney's fees.
The sole issue that controls the main appeal is whether an allegedly insane individual possesses the requisite capacity to act "intentionally," within the framework of an "intentional injury exclusion clause" found in an insurance policy. After examining the authorities submitted by counsel on the issue, we believe the better rule to be that an insane individual cannot be deemed to have acted "intentionally."
Clearly, there was conflicting testimony presented before the jury concerning Maguire's capacity to understand the nature and consequences of his act, his capacity to form an intent to harm, and his competency to distinguish right from wrong. From this conflicting testimony, the jury implicitly determined that Maguire was insane at the time of the shootings and, as there was substantial competent evidence to support the jury's verdict, we will not disturb same.
Notwithstanding the jury's determination that Maguire was insane, Arkwright contends that an insane individual can act "intentionally" even though said individual does not possess the capacity to comprehend the consequences of his act. Arkwright refers to the record in this case, and more particularly to the testimony of the two physicians, wherein it appears that both physicians are in agreement that Maguire had a sufficient mental capacity to realize that he was picking up a gun, pointing it at a victim and discharging a bullet. Necessary in Arkwright's position is the view that the physical act can be separated from the mental processes involved in that act. We cannot accept that view.
As previously stated, we hold, as did our sister court in the similar case of George v. Stone, 260 So.2d 259 (Fla. 4th DCA 1972), that an insane individual cannot commit an intentional act within the meaning of an "intentional injury exclusion clause." This view appears to be adhered to by the leading authorities on the subject. See 1A Appleman Insurance Law and Practice, § 482 (1965) and 10 Couch on Insurance 2d, § 41.667 (1962). We do note, however, that other jurisdictions have reached contrary views holding that an insane individual can nevertheless "intentionally" act even though the consequences of the act are incomprehensible to that individual. Colonial Life and Accident Insurance Company v. Wagner, 380 S.W.2d 224 (Ky. Ct. App. 1964); Rider v. Preferred Accident Insurance Company of New York, 183 App.Div. 42, 170 N.Y.S. 974 (1918).
Arkwright's reliance upon our decisions in Cloud v. Shelby Mutual Insurance Company of Shelby, Ohio, 248 So.2d 217 (Fla. 3d DCA 1971) and Hartford Fire Insurance *194 Company v. Spreen, 343 So.2d 649 (Fla. 3d DCA 1977) is misplaced. Those cases stand for the generally accepted proposition that within the meaning of an "intentional injury exclusion clause" found in an insurance contract, coverage is denied where the insured's act is deliberately designed or specifically intended to cause harm to a third party. Neither of the above cases dealt with the issue of insanity, nor should be applied to a situation wherein the actor-insured has been found to be insane.
In conclusion, as the jury implicitly found Maguire insane at the time of the shootings, his acts could not be characterized as "intentional." Thus, the exclusionary clause found in Arkwright's policy of insurance was not applicable.
Turning now to appellee Diane's appeal, which challenges the correctness of an order setting aside an award of attorney's fees, we set forth Section 627.428(1), Florida Statutes (1977), which provides that:
"627.428 Attorney fee. 
"(1) Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of an insured or the named beneficiary under a policy or contract executed by the insurer, the trial court, or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court, shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had."
Contrary to appellee's contention, her status as a named insured in the policy is not relevant. Sub judice, appellee filed suit in her capacity as a third party beneficiary to the liability provision of the homeowner's policy which insured Maguire. While both Diane and Blanche were insureds under the homeowner's policy by virtue of their being residents of the household, it was the status of Maguire as an insured committing a non-excluded act which was at issue. The learned trial judge so recognized and acted correctly in setting aside the award of attorney's fees originally provided in the final judgment. See Roberts v. Carter, 350 So.2d 78 (Fla. 1977) and Wilder v. Wright, 278 So.2d 1 (Fla. 1973).
Other points raised by the parties have been considered by this court and have not been determined to amount to reversible error.
Accordingly, the final judgment, order setting aside attorney's fees, and amended final judgment are hereby affirmed.
Affirmed.