Ellen **CHARNEY**, Plaintiff-Appellant,

v.

**ILLINOIS MUTUAL LIFE CASUALTY COMPANY**, Defendants-Appellees.

Steve **BROMBERG**, Plaintiff-Appellant,

v.

**ILLINOIS MUTUAL LIFE CASUALTY COMPANY**, Defendant-Appellee.

Nos. 84–5665, 84–5666.
Non-Argument Calendar

United States Court of Appeals,
Eleventh Circuit.

July 9, 1985.

Marc Jay Tannen, Sams, Ward, Newman, Beckham & Elser, P.A., Marc Cooper, Miami, Fla., for plaintiffs-appellants.

Richard M. Leslie, Michael H. Meares, Miami, Fla., for defendants-appellees.

Before RONEY, FAY and JOHNSON, Circuit Judges.

PER CURIAM:

Plaintiffs, the wife and the business partner of the insured, appeal an adverse summary judgment in these consolidated life insurance cases. The district court held that the insured's life insurance policy, which excluded liability for suicide "whether sane or insane" if committed within two years of the policy date, was not ambiguous and that the insured's mental state at the time of his self-inflicted death, allegedly induced by prescribed drugs, was irrelevant to that policy. We affirm.

Dr. Marvin Charney was a Florida veterinarian being treated for hypertension with the medication reserpine. A possible side effect of reserpine is depression. Dr. Charney began showing symptoms of severe depression shortly after being placed on the drug. The evening after Dr. Charney's first visit to a psychiatrist, he went to his office, wrote a note to his family, injected himself with T61 euthanasia solution, and died.

The combined policies at issue here insured Dr. Charney's life in the amount of $500,000 for his wife, and $100,000 for his business partner, Steven Bromberg. Each policy contained the following suicide exclusion:

> SUICIDE. If the Insured, whether sane or insane, shall die by his own hand or act within 2 years after the Date of the Policy, our liability under this Policy shall be limited to the premiums paid hereon.

The insured died within two years of the policy date and defendant tendered the premium paid.

There is no question that Dr. Charney did in fact "die by his own hand." Nor is there any doubt that he "intended" to kill himself in the sense that he knew and understood the physiological effects of injecting himself with T61 euthanasia solution. The sole issue before this Court is whether the suicide exclusionary clause does not apply because Dr. Charney's reserpine-induced depression so diminished his mental capacity that he did not have the requisite intent to commit suicide.

While no Florida case cited to us has discussed this particular issue, there appears to be no reason why the plain and unambiguous language of the policy should not control. Even assuming that the in-

sured was rendered insane by reserpine, there is nothing in the contract that suggests the cause of insanity would make any difference in the policy's coverage. The cause of Dr. Charney's insanity, if he was insane, is simply irrelevant. The following cases have all held that a suicide "sane or insane" clause is to be given effect irrespective of the insured's mental state. *Bigelow v. Berkshire Life Ins. Co.*, 93 U.S. (3 Otto) 284, 287, 23 L.Ed. 918 (1876); *Clarke v. Equitable Life Assur. Soc.*, 118 Fed. 374, 378 (4th Cir.1902); *Johnson v. Metropolitan Life Ins. Co.*, 404 F.2d 1202, 1204 (3d Cir.1968); *Ann Arbor Trust Co. v. North American Co. for Life & Health Ins.*, 527 F.2d 526 (6th Cir.1975), *cert. denied,* 425 U.S. 993, 96 S.Ct. 2206, 48 L.Ed.2d 818 (1976).

Plaintiff's argument that the "sane or insane" clause is ambiguous due to the necessity of intent in a suicide is based on *Searle v. Allstate Life Ins. Co.*, 96 Cal. App.3d 614, 616, 158 Cal.Rptr. 5 (1979). That case was recently overturned by the California Supreme Court which held that "we conclude the Court in *Searle I* erred in holding the clause ambiguous and in reasoning that insanity necessarily precludes formation of the intent to commit suicide." *Searle v. Allstate Life Insurance Co.*, 38 Cal.3d 425, 212 Cal.Rptr. 466, 471, 696 P.2d 1308, 1313 (1985). *Searle* is thus now authority for defendant's position.

■ Florida law requires the intent to achieve self-destruction for suicidal intent to be found. *Gulf Life Ins. Co. v. Nash*, 97 So.2d 4, 6 (Fla.1957). Without the intent of self-destruction there would be no suicide because the death would be accidental. An accidental death would be covered by the instant policy. Plaintiffs have confused felonious intent negated by diminished capacity with the intent to reach an end through a particular means. The only intent *Nash* requires is the intent to cause death, and that is an undisputed fact here.

The three Florida cases relied on by plaintiff to raise an ambiguity in the policy language due to diminished capacity are not on point. Although each dealt with a contractual exclusion held not to apply due

to the insured's insanity, *Arkwright-Boston Manufacturers Mutual Ins. Co. v. Dunkel*, 363 So.2d 190 (Fla. 3rd DCA 1978); *Northland Ins. Co. v. Mautino*, 433 So.2d 1225 (Fla. 3d DCA 1983), *pet. for rev. denied*, 447 So.2d 887 (Fla.1984); *George v. Stone*, 260 So.2d 259 (Fla. 4th DCA 1972), none considered a "sane or insane" clause.

■ Nor can plaintiff's theory that the insured's death was directly caused by the reserpine-induced depression succeed. Whatever the effect of the reserpine on the insured, the direct cause of his death was the self-injection of T61 euthanasia solution.

The cases cited by plaintiffs, *Travelers Ins. Co. v. Melick*, 65 Fed. 178 (8th Cir. 1894) and *Norbeck v. Mutual of Omaha Ins. Co.*, 3 Wash.App. 582, 476 P.2d 546 (1970), both involve ambiguities in the policies themselves. There is no ambiguity in the instant case. Whatever the cause of the insured's mental state, he did in fact intend the result of his act and died by his own hand. That is all Florida law requires.

AFFIRMED.