725 P.2d 827

**The ESTATE OF James R. GALLOWAY, and Alice P. Galloway, Personal Representative of the Estate of James R. Galloway, Plaintiffs-Appellants,**

v.

**GUARANTY INCOME LIFE INSURANCE COMPANY, Defendant-Appellee.**

**No. 15989.**

Supreme Court of New Mexico.

Sept. 22, 1986.

Joseph William Reichert, Albuquerque, for plaintiffs-appellants.

Briggs Cheney, Albuquerque, for defendant-appellee.

## OPINION

STOWERS, Justice.

Alice Galloway (Mrs. Galloway) personal representative of James Galloway (Galloway), filed a complaint against Guaranty Income Life Insurance Company (Guaranty) for the payment of the face value of a life insurance policy. Guaranty denied liability and filed a motion for summary judgment, which the district court granted. Galloway appeals and we affirm.

Galloway executed a life insurance policy with Guaranty on March 22, 1983, insuring his life for $500,000 and naming Mrs. Galloway as the owner and beneficiary. On January 14, 1984, Galloway shot himself. He was taking medication at the time of his death and Mrs. Galloway contends that he did not have the mental capacity or intent to commit suicide.

The life insurance policy contained a standard suicide clause which states: "[i]f the insured commits suicide, while sane or insane, within two years from the policy date, the liability of the company shall be limited to the amount of premiums paid." After the claim was filed, Guaranty, acting under the above language, returned to Mrs. Galloway the amount of premiums paid, which she refused.

Mrs. Galloway raises two points on appeal. The dispositive issue we address is whether summary judgment is proper for Guaranty when plaintiff argues that her husband did not intend or plan to take his life.

The fact is not disputed that Galloway killed himself. An autopsy was performed but it did not include an examination for drugs in the body at the time of death. Galloway was taking two types of blood pressure medication, and two other types of stress and sleep medication were found among his personal belongings. It is unknown what combination of these medications was ingested before death.

The term suicide is not defined within the life insurance policy or statutorily. In *Vihstadt v. The Travelers Insurance Company*, 103 N.M. 465, 709 P.2d 187 (1985), we held that when a word is not defined in the insurance policy, it must be interpreted in its usual, ordinary and popular sense. Black's Law Dictionary 1286 (5th ed. 1979) defines suicide as the "[s]elf-destruction; the deliberate termination of one's existence."

Mrs. Galloway argues that because of Galloway's behavior prior to his death, he did not form the mental intent to deliberately take his own life. Three days prior to his death, Galloway had been elected president of the La Mesa Medical Center; he had an appointment scheduled for the morning following his death with a banker, and he arranged his personal things as he always did, with what would seem is the intent to get up in the morning. Mrs. Galloway claims that these are not the actions of someone contemplating suicide.

Many early cases have held that self-destruction while insane was not suicide within a suicide exclusion clause since it was deemed that there could be no suicide unless the person committing the self-destructive act could form a conscious intention to kill himself and carry out that act, realizing its moral and physical consequences. As a reaction to these holdings, insurers began to add to suicide exclusion clauses the phrase "sane or insane." Annot., 9 A.L. R.3d 1015 (1966).

Galloway's life insurance policy included the phrase "suicide, while sane or insane." Provisions excluding or limiting the insurer's liability where injury or death results from suicide have usually been held valid absent a regulatory statute providing otherwise. *Id.* NMSA 1978, Section 59A–20–25(A)(2)(e) (Orig.Pamp.1984), specifically allows the "sane or insane" exception. Here, we examine whether the capacity to comprehend the physical nature or consequences of the act of suicide is part of the policy exclusion. New Mexico has no case law on this point, so we look to other jurisdictions.

The Third Circuit Court of Appeals stated in *Johnson v. Metropolitan Life Insurance Company*, 404 F.2d 1202, 1204 (1968), that "on its face [suicide, while sane or insane] plainly comprehends all purposeful self destruction, whether the suicidal intent and conduct shall emanate from a sane mind or a deranged one." The court found no case that holds an exception of suicide while insane to be meaningless or wholly ineffective.

Mrs. Galloway argues that Galloway was in such a mental state that he was unable to appreciate the physical nature and consequences of the act that resulted in his death. However, the court in *Johnson* stated that the majority rule is that the applicability of a "suicide, sane or insane" clause is not dependent on the insured's clear realization of the physical nature and consequences of his act.

*Ann Arbor Trust Co. v. North American Co. for Life and Health Insurance*, 383 F.Supp. 310 (E.D.Mich.1974), *modified*, 527 F.2d 526 (6th Cir.1975), *cert. denied*, 425 U.S. 993, 96 S.Ct. 2206, 48 L.Ed.2d 818 (1976), involved a similar issue that we examine here, including summary judgment. The court stated that the plaintiff must overcome two obstacles to survive defendant's motion for summary judgment. It must first be established that there is a genuine issue or disagreement, and second, that the disagreement concerns a material fact. The court found that though there may have been a disagreement as to the insured's capacity to understand the physical nature of the suicidal act, the facts were undisputed. They stated that the applicability of the "suicide, sane or insane" clause is not dependent on the insured's clear realization of the physical consequences of his act.

In the instant case, the facts are also clear and undisputed. The evidence provided in the record does not indicate that Galloway did not realize that his act would kill him. He knew how and where the gun was kept and he apparently knew where to inflict a wound that would result in death. The possible diminished capacity due to

drug medication could not support a reasonable conclusion that Galloway was unaware of the factual consequences of his act. To sustain such a contention would require us to believe that Galloway shot himself through the head although he did not know it would kill him. It is clear that the facts set forth can only support a finding or conclusion that Galloway understood the physical nature or consequences of his act.

Mrs. Galloway cites several cases that are distinguishable from the instant case. In *Christensen v. New England Mutual Life Insurance Company*, 197 Ga. 807, 30 S.E.2d 471 (1944), the insured had hallucinations and jumped from a sixth story window to escape injury from imaginary enemies. The court held that the insured did not realize that his act would as a natural consequence produce his death. Mrs. Galloway does not claim that Galloway suffered hallucinations. Thus, *Christensen* is not analagous to our present facts.

*Searle v. Allstate Life Insurance Co.*, 38 Cal.3d 425, 212 Cal.Rptr. 466, 696 P.2d 1308 (1985), held that the insurer must prove by a preponderance of the evidence that the act was performed with suicidal intent. Though insane, the insured must have the intent to take his life. In *Searle*, the insured threatened the lives of his wife and his children before shooting himself. However, in that case the court reversed a decision for the insurer based on an incorrect jury instruction on the burden of proof.

NMSA 1978, Civ.P. Rule 56(e) (Repl. Pamp.1980), requires that in opposing a prima facie showing of entitlement to summary judgment, the defending party must set forth specific facts showing that there is a genuine issue for trial. Ms. Galloway failed to meet that burden.

For the foregoing reasons, the decision of the district court is affirmed.

FEDERICI and WALTERS, JJ., concur.