**Mary George RIVES, As Guardian For Her Minor Children, Mary Donna RIVES, Gennifer George Rives and Don Shurden Rives, Jr., and Mary George Rives, As Trustee of the Testamentary Trust of Don Shurden Rives, Sr., Deceased, for the Benefit of his Minor Children, Mary Donna Rives, Gennifer George Rives and Don Shurden Rives, Jr., Plaintiffs,**

v.

**The FRANKLIN LIFE INSURANCE COMPANY, A Corporation; the Equitable Life Assurance Society of the United States, A Corporation, et al., Defendants.**

No. EC84-168-LS-D.

United States District Court, N.D. Mississippi, E.D.

July 20, 1987.

Martin S. Friedlander, David E. Wheeler, Herzfeld & Rubin, Los Angeles, Cal., Frank M. Deramus, Deramus & Tucker, Louisville, Miss., for plaintiffs.

D. Gary Sutherland, Joseph A. O'Connell, Heidelberg, Sutherland and McKenzie, Hattiesburg, Miss., for defendants.

## MEMORANDUM OPINION

SENTER, Chief Judge.

Plaintiffs bring this action pursuant to 28 U.S.C. § 1332 alleging that the defendants have wrongfully denied their claim to benefits under the terms of two life insurance policies. This cause is presently before the court on defendants' motion for partial summary judgment.

### I.

In October of 1980, Don Shurden Rives, Sr., purchased two life insurance policies

from the defendant insurance companies. The policy issued by Franklin Life provided for a payment of $600,000.00 upon the death of the insured, but included the following limitation:

> **Suicide:** If within 2 years from the date of issue the insured (whether sane or insane) shall die by suicide, this policy shall automatically terminate and the amount payable in lieu of all other benefits shall be limited to the premiums paid.

The Equitable Life policy also provided for $600,000.00 life insurance coverage and contained a similar provision:

> **Suicide Exclusion.** If the insured commits suicide, while sane or insane, within two years after the date of issue shown on page 3, our liability will be limited to the payment of a single sum equal to the premiums paid.

Rives was found dead in 1981, an apparent victim of a gunshot wound to the head. A revolver was found by police in his right hand; death was caused by a bullet through his right temple.

The exact nature of Rives' death is shrouded in mystery. Plaintiffs' primary contention is that Rives was the victim of a homicide. Defendants concede that if this is true, then benefits should be paid to the plaintiffs as requested; nevertheless, under the circumstances surrounding Rives' death, the defendants contend that death was more likely the result of suicide, and a tender of premiums is all that is required.

The parties agree that the cause of Rives' death is a genuine issue of material fact which must be submitted to a jury; a complete resolution of this case is, therefore, not possible short of trial. *See* Rule 56, F.R.Civ.P.

Plaintiffs advance an alternate theory, however, and assert that they may be entitled to recover even if a jury finds Rives' death to be the result of a self-inflicted wound. Evidence exists to show that Rives was under the influence of both drugs and alcohol at the time of his death. The plaintiffs assert that if an individual is incapable of mentally forming an intent to kill himself, he cannot be said to have committed suicide even if his actions proximately result in his being fatally injured.

The defendants counter this argument by pointing to the "sane or insane" clause referred to above. By specifically eliminating the requirement that an insured be sane when committing suicide, defendants contend the mental state of the decedent has become irrelevant to the determination of whether benefits are payable under the terms of the policy. In short, the defendants ask the court to construe the phrase "whether sane or insane" to mean "whether sane, insane, or otherwise mentally impaired."

## II.

Over one hundred years ago, insurance companies found themselves faced with an unanticipated risk of exposure to liability. If an insured committed suicide while insane, benefits were construed by courts to be payable notwithstanding the fact that the policy excluded from its terms death caused by self-inflicted injury. *See generally*, Annotation, "Insurance: Construction of 'Sane or Insane' Provision of Suicide Exclusion," 9 A.L.R.3d 1015, *superseding* Annotation, 35 A.L.R. 160.

As a result of this trend, insurers inserted the "suicide, whether sane or insane" clause into their policies. This modification worked in a majority of jurisdictions; courts rejected insurance claims where the decedent had committed suicide while insane. *See, e.g., Bigelow v. Berkshire Life Ins. Co.*, 93 U.S. (3 Otto) 284, 23 L.Ed. 918 (1876); *Mutual Life Insurance Co. v. Terry*, 15 Wall. 580, 21 L.Ed. 236 (1872).

Mississippi follows the majority rule by construing "sane or insane" to make inquiry into a decedent's mental capacity irrelevant. As this court has previously noted,

> [I]n order for the insurer to avoid liability under an exclusion of coverage of death from suicide, sane or insane, it need not be shown that the insured ... had the mental capacity to realize the physical nature or consequences of his act or to form a conscious purpose to kill himself....

*Randle v. Continental Casualty Co.,* 458 F.Supp. 7, 12 (N.D.Miss.1978), *affirmed,* 584 F.2d 117 (5th Cir.1978). This rule is supported by Mississippi cases which hold that suicide voids the policy regardless of whether the decedent was mentally incapable of forming an intent to destroy himself. *Sovereign Camp, W.O.W. v. Hunt,* 136 Miss. 156, 98 So. 62 (1923).

Although no Mississippi cases are on point, other jurisdictions have considered the applicability of the "sane or insane" provisions to situations where the decedent's mental state is affected by his ingestion of drugs or alcohol. As a general rule, courts faced with this question have held that the "sane or insane" clause did apply and refused to consider evidence related to the decedent's mental capacity. *See, e.g., Charney v. Illinois Mutual Life Casualty Co.,* 764 F.2d 1441 (11th Cir.1985) (applying Florida law) (man on drugs injected himself with lethal solution); *Estate of Galloway v. Guaranty Income Life Insurance Co.,* 104 N.M. 627, 725 P.2d 827 (1986) (applying New Mexico law) (man on drugs who shot himself); *State ex rel Shoemaker v. Daues,* 312 Mo. 62, 278 S.W. 735 (1925) (applying Missouri law) (man on drugs slit his throat and jumped out a window).

### Conclusion

Based on the foregoing, the court is of the opinion that defendants are entitled to judgment as a matter of law with respect to plaintiffs' mental impairment theory of recovery. This ruling does not address the validity of plaintiffs' homicide theory; genuine issues of material fact require that this question be presented to a jury for decision at a trial on the merits.

An order shall issue in conformity with this opinion.