644 So.2d 992 (1994)
Renuka PRASAD, Appellant,
v.
ALLSTATE INSURANCE COMPANY, Appellee.
No. 81825.
Supreme Court of Florida.
September 22, 1994.
Rehearing Denied November 16, 1994.
Harvey Hardy of Hollbrook, Hardy and Barber, and H. Scott Gold, Orlando, for appellant.
Sharon Lee Stedman of Sharon Lee Stedman, P.A., and Lori J. Caldwell and David Shelton of Rumberger, Kirk & Caldwell, P.A., Orlando, for appellee.
OVERTON, Justice.
In Allstate Insurance Co. v. Prasad, 991 F.2d 669 (11th Cir.1993), the United States Court of Appeals for the Eleventh Circuit certified three questions to this Court concerning insurance coverage of a stabbing assault by a psychotic insured. The determinative issue in this case involves the definition of "accident" within the "intentional injury exclusion clause" of the insurance policy. We have jurisdiction. Art. V, § 3(b)(6), Fla. Const. For the reasons expressed, we hold that an injury inflicted by an insured who is psychotic is not an "accident" and is an intentional act within the meaning of the policy provisions at issue if the insured intends to cause the injury even if the insured's conduct is the result of the insured's mental condition.
In this case, Renuka Prasad filed suit in Florida state court against her mother, Chandra Palat, and her brother, Toreshwar Nauth, seeking payment of damages for injuries she received when Nauth attacked her with a knife while she was visiting her mother's home. In that action, she alleged the following facts:
In Count One Prasad alleged that she was an invitee of the mother to the Palat home and that the mother negligently breached a duty of care to inform Prasad that her son was insane; that she knew that her son had violent propensities, was in a deteriorating mental condition, unpredictable and dangerous, and suffering from paranoid *993 schizophrenia; and that as a direct result of the son's failure to take his antipsychotic medication his mental condition was so severely deteriorated that he was legally insane and thus unable to form intent. In Count Two Prasad alleged negligence by the son, arising from the son's awareness that he must take his antipsychotic medication, and his failure to do so, rendering him insane and incapable of formulating intent.
Paragraph 13 of the complaint alleged that two psychiatrists had examined the son and determined that he was a chronic psychotic, suffering from paranoid schizophrenia, and as a direct result of failure to be maintained on his medication his mental condition was so severely deteriorated that he was legally insane at the time of the stabbing and thus unable to form intent.
991 F.2d at 670.
Allstate filed a declaratory action in federal district court seeking to have the court hold that its homeowner's insurance policy provided no coverage for the personal injuries Prasad suffered and that it had no duty to defend or indemnify the insureds. The two relevant sections of the policy read as follows:
Section II  Family Liability and Guest Medical Protection, Coverage X, Family Liability Protection:
(1) Losses We Cover
Allstate will pay all sums arising from an accidental loss which an insured person becomes legally obligated to pay as damages because of bodily injury or property damage covered by this part of the policy.
(2) Losses We Do Not Cover
We do not cover any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which are in fact intended by an insured person.
(Emphasis added.) The state court action was stayed pending resolution of the federal court action. The federal district court granted Allstate's motion for judgment on the pleadings. On appeal the Eleventh Circuit certified the following three questions to this Court:
(1) Under Florida law, does the intentional acts exclusion of the policy in question apply in circumstances alleged in the state court complaint?
(2) Are the injuries alleged in the state court complaint an "accidental loss" as described in the policy?
(3) Does the criminal acts exclusion of the policy apply in the circumstances alleged in the state court complaint?
Id. at 672.
Regarding the first question, Prasad contends that the policy's intentional and criminal acts exclusion, generally referred to as an "intentional acts exclusion clause," does not apply in the circumstances alleged in the state court complaint because Nauth was not capable of forming intent at the time of the stabbing. Allstate argues that it was Nauth's intentional stabbing that caused the injuries and not Nauth's failure to take his anti-psychotic medication. Allstate also contends that our decision in Landis v. Allstate Insurance Co., 546 So.2d 1051 (Fla. 1989), is dispositive of the issues here because, in that case, we determined that the intentional acts exclusion clause applied where an insured, covered by a homeowners policy, was acting under a diminished mental capacity and had sexually abused children in her home. In Landis, it was clear that an intentional act had occurred, and we were addressing the issue of whether it was necessary that there be specific intent to commit the harm caused by that intentional act. In excluding coverage, we expressly held that "specific intent to commit harm is not required by the intentional acts exclusion." Id. at 1053 (emphasis added).
The issue here is similar but not identical. In this instance, the issue involves the question of whether Nauth had the specific intent to commit the act, rather than whether he had the specific intent to commit the harm. We recognize that this issue has been addressed by our Florida district courts of appeal which have found that an insane individual is incapable of forming the intent necessary to preclude coverage under an intentional acts exclusion clause. See Northland Ins. *994 Co. v. Mautino, 433 So.2d 1225 (Fla. 3d DCA 1983), review denied, 447 So.2d 887 (Fla. 1984); Arkwright-Boston Mfrs. Mut. Ins. Co. v. Dunkel, 363 So.2d 190 (Fla. 3d DCA 1978); George v. Stone, 260 So.2d 259 (Fla. 4th DCA 1972). All of these decisions were rendered before our Landis decision.
Other states that have addressed the issue of diminished capacity or insanity and intent under an intentional acts exclusion clause have developed two distinct lines of authority. Catherine A. Salton, Mental Incapacity and Liability Insurance Exclusionary Clauses: The Effect of Insanity Upon Intent, 78 Cal.L.Rev. 1027 (1990). The first line of authority finds that coverage under the intentional acts exclusion clause is not precluded when an injury results from an insane act. This conclusion is based on the view that the
purpose of incorporating intentional injury exclusions into insurance policies is to preclude persons from benefiting financially when they cause injury. Thus, an individual who lacks mental capacity to conform his conduct to acceptable standards will not be deterred by the existence or nonexistence of insurance coverage for the consequences of his conduct.
Johnson v. Insurance Co. of N. Am., 232 Va. 340, 350 S.E.2d 616, 619 (1986). See Globe Am. Casualty Co. v. Lyons, 131 Ariz. 337, 641 P.2d 251 (App. 1981); Mangus v. Western Casualty & Sur. Co., 41 Colo. App. 217, 585 P.2d 304 (1978); Aetna Casualty & Sur. Co. v. Freyer, 89 Ill. App.3d 617, 44 Ill.Dec. 791, 411 N.E.2d 1157 (1980); State Farm Fire & Casualty Co. v. Wicka, 474 N.W.2d 324 (Minn. 1991) (recovery under intentional acts exclusionary clause is not barred if insured, because of mental illness or defects does not know nature or wrongfulness of act or is deprived of ability to control conduct); Ruvolo v. American Casualty Co., 39 N.J. 490, 189 A.2d 204 (1963) (recovery is not barred if loss is product of an insane act).
The second line of authority concludes that an injury inflicted by an insane person is intentional if the actor understands the physical nature and consequences of the act. This is true even if the actor is unable to distinguish right from wrong. This second line of authority is embraced by a number of other state supreme courts. See Shelter Mut. Ins. Co. v. Williams, 248 Kan. 17, 804 P.2d 1374 (1991) (an injury inflicted by an insured who is mentally ill is intentional within the meaning of the policy provision excluding coverage for intentional acts of the insured if the insured understands the nature and quality of his acts and intends to cause the injury, even though the insured may have been unable to recognize his conduct as wrongful); Auto-Owners Ins. Co. v. Churchman, 440 Mich. 560, 489 N.W.2d 431 (1992) (insane paranoid schizophrenic who stated his intentions to shoot another may have been unable to form the criminal intent necessary to be charged with murder, but such individual still intended or expected the results of the injuries he caused for purposes of excluding coverage); Economy Preferred Ins. Co. v. Mass, 242 Neb. 842, 497 N.W.2d 6 (1993) (shooter who was found not guilty in criminal trial by reason of insanity still intended the results of his actions because he knew he was shooting a gun; however, if he thought he was peeling banana at the time he fired the gun, insanity might preclude application of intentional injury exclusion clause); Mallin v. Farmers Ins. Exch., 108 Nev. 788, 839 P.2d 105 (1992) (shooter who was effectively insane at time he shot and killed three people because he was unable to control his emotions at the time of the shootings still "intended" to shoot victims for purposes of precluding coverage under intentional injury exclusion clause; the criminal concept of insanity is entirely different than the civil concept of insanity); Johnson, 350 S.E.2d 616 (coverage of mentally ill insured who shot and injured friend was precluded by intentional injury exclusion clause where insured was aware of fact that he was shooting friend, but believed God ordered him to do so); Municipal Mutual Ins. Co. v. Mangus, 443 S.E.2d 455 (W. Va. 1994) (coverage under an intentional injury exclusion clause may be denied when the one who commits a criminal act has a minimal awareness of the nature of his or her act; the test for criminal insanity is appropriate only in a criminal trial and has no applicability to the interpretation of this issue).
*995 We agree with the latter line of authority because we find that a person who is considered insane may still be capable of entertaining the intent to commit certain acts, even if that intent is the consequence of a delusion or affliction. For instance, an insane or mentally ill person can still make plans to harm another, going so far as to obtain the weapon to be used and to seek out the victim. By any stretch of the imagination, the person "intended" the act against the victim, even if the person did not fully understand what he or she was doing at the time of the crime. We note the apparent inconsistencies of finding that an individual intended a crime for purposes of this type of civil insurance claim but allowing that person to escape criminal liability by reason of insanity. That inconsistency, however, was appropriately addressed by the Virginia Supreme Court in Johnson, where it stated:
On the surface, there appears to be a blatant inconsistency in concluding, as we do, that a person may be criminally insane when shooting another, and thus avoid full criminal sanctions, and yet that same individual can be denied insurance coverage because he "intended" to shoot his victim. A more careful analysis, however, will reveal there is no inconsistency at all.
In the law, there are many situations in which a person may intentionally injure or kill another and not be subject to criminal punishment. For example, an individual may kill in self-defense. The executioner may kill with the sanction of the State. A soldier may injure or kill under rules of combat. This conduct is intentional, but it is also excusable. Likewise, an individual may be excluded from penalty if he is insane at the time he commits a criminal act. As here, he may do the act with every intention of consummating it, but when it is shown that he was mentally ill, he is excused from the imposition of the usual sanctions. "The absence of punishment, however, does not retrospectively expunge the original intention." Colonial Life & Accident Ins. Co. [v. Wagner,] 380 S.W.2d [224, 226 (Ky. 1964)].
350 S.E.2d at 620-21. We find that this is the appropriate analysis and the better view. Moreover, this analysis is logically consistent with our Landis decision. To accept the opposing view would necessarily require us to find that, because a perpetrator is psychotic and unable to form the necessary intent, the injury he or she caused by stabbing was an "accident." It would also imply that, if the perpetrator had been drunk to the extent that the defense of voluntary intoxication would apply, the stabbing would also be covered under this insurance policy as an "accident." We are unwilling to hold that the definition of "accident" includes intentional assaults by psychotics and drunks but excludes other intentional assaults.
In the instant case, the complaint alleges that Prasad entered her mother's home, and Nauth approached her carrying a knife. Then, without warning, Nauth repeatedly stabbed Prasad about the arms, hands, and body. Under these allegations, we find that the stabbing was intentional. While one might "accidentally" hit another with a knife during a spasmodic fit, the act of repeatedly stabbing Prasad under the allegations of this case denotes Nauth's intentional assault.
For the reasons expressed, we answer the first certified question in the affirmative and the second in the negative. Given our resolution of the first two questions, we find it unnecessary to reach the last question posed. Accordingly, we return this case to the Eleventh Circuit Court of Appeals for further consideration consistent with this opinion. Because of this decision, we expressly disapprove Northland Insurance Co. v. Mautino, 433 So.2d 1225 (Fla. 3rd DCA 1983), review denied, 447 So.2d 887 (1984), Arkwright-Boston Manufacturers Mutual Insurance Co. v. Dunkel, 363 So.2d 190 (Fla. 3rd DCA 1978), and George v. Stone, 260 So.2d 259 (Fla. 4th DCA 1972).
It is so ordered.
GRIMES, C.J., and KOGAN and HARDING, JJ., concur.
*996 McDONALD, Senior Justice, dissents with an opinion, in which SHAW, J., concurs.
McDONALD, Senior Justice, dissenting.
Should Prasad be able to prove that Nauth was insane and unable to form an intent to commit the act of battery, then there should be coverage for Nauth under his mother's policy with Allstate. In any event, there should be coverage for Palat, the insured, for the claimed acts of negligence made against her. The intentional acts exclusion extends only to the conduct of the insured. Palat herself is not accused of intentional acts of misconduct. If the injuries claimed were caused by her acts of negligence, they were accidental for insurance coverage purposes.
The question in the instant case is not whether Nauth had specific intent to commit the harm, but whether he had specific intent to commit the act that led to the harm. Landis v. Allstate Insurance Company, 546 So.2d 1051 (Fla. 1989), is distinguishable in that in Landis there was clearly an intentional act, even though there may have been no intent to harm. The issue here is whether Nauth has the capacity to form an intent to commit an act which causes harm. An issue of fact exists on this issue. By definition, an intentional act requires a state of mind that enables one to knowingly and willingly cause an act to occur. Without such intent, as in the alleged circumstances of the instant case, the intentional acts exclusion of Allstate's policy does not apply.
In determining whether a claim for injuries results from an "accident," one usually looks from the perspective of the injured party. In Christ v. Progressive Fire Insurance Company, 101 So.2d 821 (Fla. 2d DCA 1958), the court defined accident as "an unusual and unexpected event, happening without negligence; an undesigned, sudden, and unexpected event; chance or contingency; happening by chance or unexpectedly; an event from an unknown cause or an unexpected event from a known cause." The term "accident" in insurance policies has also been defined as "an event happening without any human agency, or if happening through such agency, an event which, under the circumstances, is unusual and not expected by the person to whom it happens." Black's Law Dictionary 15 (6th ed. 1990). Prasad was the victim of Nauth's stabbing. If she can show that Nauth's battery on her was unexpected, then she has established an accident.
The applicability of the criminal acts exclusion, like the intentional acts exclusion, hinges on proof of the allegations contained in the complaint concerning Nauth's inability to form intent. It would not apply if Prasad proves the allegations of the complaint. In any event, if Prasad can prove an accident, which appears likely under the pertinent definitions, the criminal or intentional acts exclusions would not apply to the claim against Palat. This case should not be disposed of on the pleadings, but should await proof. The defense of no coverage is not absolute on the pleadings.
SHAW, J., concurs.